·POWELL vs. AIKEN & GWINN ET AL.

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

EASTERN DIS.
May, 1841.

POWELL
vs.
AIKEN & GWINN
ET AL.

18L 321
46 1380

18L 321
49  189

18L 321
107  733

Where garnishees are in possession of a slave, transferred to them in Mississippi, by the surviving partner, in payment of a debt *due by the firm*, they will hold it against an attaching creditor of a new *firm*, of which this partner is a member.

Evidence which is introduced and received without opposition or objection, although contrary to, or beyond the allegations contained in the pleadings, the adverse party is bound by its effect.

Where cotton is shipped to consignees, who are entitled to a right of privilege, so that the consignor or owner could not take it out of their hands, *his creditor cannot attach it in their hands.*

So where the defendants gave an order on their attorneys, to pay over the proceeds of certain cotton, which they had attached, to the intervenors, to be credited in their (defendants') account, it is good against subsequent attaching creditors of defendants.

*Garland, J., dissenting:*—It is not shown, that the intervenors made any *specific advance* on the thirteen bales of cotton, and are therefore not entitled to a privilege, under the article 3214 of the Code; consequently the plaintiff's attachment ought to hold the property.

This suit commenced by the attachment of a quantity of cotton, or its proceeds, and of a slave, in the hands of Lambeth and Thompson, which is alleged to be the property of the defendants, Aiken and Gwinn. There was a petition and supplemental petitions filed by the plaintiff at different times, as the facts were disclosed relative to the several items of property sought to be made liable to his attachment against property of the defendants; and also a petition and supplemental petitions put in by the intervenors, (Lambeth and Thompson,) and their answers to the plaintiff's demands. The pleadings are fully set out in the opinion of the majority of the court by Judge Simon.

The evidence showed that the slave Edmund, attached, had been transferred to Lambeth and Thompson in Mississippi, by

---

* *Judge Bullard* was not present, when this case was argued and decided. He was, however, present at the consultation on an application for a re-hearing; and concurred with the dissenting judge.

EASTERN DIS.  J. R. Aiken, surviving partner of the firm of Martin & Aiken
  *May,* 1841.  for a debt due by said firm, who was brought down to New
  POWELL    Orleans and attached.
    *vs.*
AIKEN & GWINN ·   There were 58 bales of cotton, or its proceeds, attached as
  ET AL.    defendant's property in the hands of Lambeth and Thompson,
which defendants had attached in a suit against their debtor G.
W. Reynolds ,and gave an order on their attorneys, to pay over
the amount of such judgment as they might obtain, to Lam-
beth and Thompson, who in the meantime were in possession
of Reynold's cotton.

The 13 bales were claimed by Lambeth and Thompson for
a balance due for various advances of money, acceptances,
&c. under an arrangement or agreement between them and
the defendants, who were merchants of Vicksburg.

There was judgment against the plaintiff, and in favor of
the intervenors, Lambeth and Thompson. The plaintiff ap-
pealed.

*Elmore & King,* for the plaintiff and appellant, insisted
that the plaintiff's attachment should have been sustained
throughout; that the evidence showed the slave was the pro-
perty of J. R. Aiken, and. not of the old firm of Martin and
Aiken ; consequently he was liable to the attachment.

2. There was no specific advances made according to the
3214th article of the Code, to give a privilege on the 13 bales
of cotton. It was evidently received and intended to be ap-
propriated in payment of a general balance.

3. As to the 58 bales, the transfer of the defendants of their
attachment and such judgment as they might obtain, to the
intervenors cannot avail; because no notice was given to Rey-
nolds, the debtor, which was necessary, as it was a release of
a debt due by L. and T. as garnishees of the plaintiff to that
suit.

*Peyton & Smith,* for the intervenors and appellees.

1. The court below rightly decided according to the evi-

dence introduced by intervenors and garnishees, and received

without objection. It is too late to argue that the *probata* do not conform to the *allegata;* 11 Martin's Rep. 26, Bryan vs. Moor's heirs; 6 Martin N. S. 86, McMicken vs. Brown; 1 La. Rep. 301, Leggett vs. Peet et al.

2. The testimony proves conclusively that the slave attached in this suit belonged to Aiken, as survivor of the late firm of Martin and Aiken, and who are still indebted to Lambeth and Thompson in a sum by far exceeding the value of the slave:— The intervenors therefore are entitled to the preference over the plaintiffs who are only creditors of the new firm; 10 La. Rep., 348, Hagan et al. vs. Scott; 12 Idem, 374, Gardiner et al. vs. Smith; 13 Idem, 281, Claiborne et al. vs. their creditors.

3. The thirteen bales of cotton was received by the garnishees under the special contract made between them and Aiken and Gwinn, by which in substance the latter were made the agents of the former, to purchase and forward cotton to them and advances to an amount far exceeding the value of the cotton received, are proved to have been made. The garnishees are entitled to the benefit of the law for consignees making advances on property, afterwards attached in their possession.— L. C. 3214; La. Rep. 14, p. 476, Turpin vs. Reynolds.

Besides it is proved that the defendants could under the special agreement exercise no control over these thirteen bales. The garnishees might sell them when and how they pleased, and exercise absolute control over them. And the plaintiffs can acquire no greater rights than the defendants had at the levying of the attachment. 7 Martin, N. S., Babcock vs. Malbie.

4. The proceeds of the fifty-eight bales of cotton were transferred to the garnishees prior to the attachment. No notice to Reynolds was necessary, for it was a release of the debt due by Lambeth and Thompson, as garnishees in the former case to the plaintiffs to that suit. By the judgment in that case, the plaintiffs succeeded to the rights of the defendant

EASTERN DIS.
May, 1841.

POWELL
vs.
AIKEN & GWINN
ET AL.

against the garnishees in that suit; and as the debt due by the garnishees in that suit was remitted before the attachment was levied in this case—there was no debt due by the garnishees to the defendant.—See the case last above cited.

5. The testimony offered under the rule against the garnishees was properly received. The rule did not call upon them to show cause upon the answers filed only. Besides if the answers confessed facts which authorized judgment for the plaintiff, why take a rule at all ? If called upon to show cause, what better cause can be shown than facts proved by witnesses, which show that the plaintiff is not entitled to recover against the defendants in the rule ? 13 La. Rep. 468.

*Simon, J.* delivered the opinion of the court.

On the 8th of April, 1840, plaintiff sued out an attachment against the defendants, which was first levied, among other property, on a negro slave named Edmund; on the 13th of the same month, Lambeth & Thompson intervened, alleging that at the time the attachment issued, said slave was their property, by virtue of a transfer made to them and one James Gwinn on the 1st of May, 1838; that said slave was delivered to their co-transferree in Mississippi, and was by him brought to Louisiana in order to sell the same to pay the debt specified in the transfer, which debt is still due and unpaid. The deed of transfer is annexed to their petition ; and they pray that the sheriff be ordered to retain in his hands the slave or its proceeds, and that the same be restored to the intervenors.

On the 20th of May, the plaintiff filed a supplemental petition, made Lambeth & Thompson garnishees, and propounded to them certain interrogatories, to which the garnishees answered by stating : 1st. That they had not in their possession any property, rights, credits or effects belonging to the defendants or in which they were in any manner interested ; except thirteen bales of cotton which were sent to them by the defendants in the usual course of business, to pay advances by them made to said defendants. 2d. That fifty-eight bales of cotton, no

mark, had previously been attached in their hands by the de-
fendants as the property of G. W. Reynolds, the net proceeds
of which, amounting to $1049, remained in their possession
according to a previous agreement; that on the 7th of April,
1840, one of the defendants, in behalf of both, transferred to
them the amount of said proceeds in consideration of moneys
to a far larger amount previously advanced by them to the de-
fendants, and gave them an order on Peyton & Smith, their
attorneys in said suit accordingly.   And 3d. That they had
no written communication from the defendants, except the one
above mentioned, and had none from Reynolds, &c.   The or-
der on Peyton & Smith, is written at the foot of the notice of
attachment against Reynolds, and is in the following words:
  " Messrs. Peyton & Smith will please pay over to to W. M.
Lambeth & Thompson the proceeds of fifty-eight bales of cot-
ton which was consigned to them per the steamboat Bayou
Sara, ' no mark;' which was attached by us as the property of
George W. Reynolds, on the 27th February last, and their re-
ceipt will be good for the same.—New Orleans, April 7th,
1840.          (Signed)          AIKEN & GWINN."
  On the 28th of May, another supplemental petition was filed
by the plaintiff who propounded new interrogatories to the
garnishees to ascertain the consideration which they gave for
the claim against Reynolds; which interrogatories were sub-
sequently answered by their giving a statement of the circum-
stances under which the claim was transferred, and showing
that it was in consideration and in part payment of a large
debt which the defendants owed them since the year 1838.
  On the 29th of October, 1840, the intervenors filed a sup-
plemental opposition, in relation to the slave Edmund, in
which they state that said slave never was the property of the
defendants, but belonged to John R. Aiken, and was by him
assigned and transferred to pay the debt detailed in the assign-
ment; whereby the proceeds of the slave are still liable to
them to be applied in part payment of said debt in preference
to plaintiff's, and they pray accordingly.   On the 7th of De-

EASTERN DIS.
May, 1841.

POWELL
*vs.*
AIKEN & GWINN
ET AL.

cember, plaintiff answered the petition of intervention, by pleading the general issue and alleging that the instrument by virtue of which the intervenors claim the slave attached, is fraudulent and void, and never was recorded so as to operate to the prejudice of the attachment.

On the 17th of the same month, a rule was taken on the garnishees to show cause why judgment should not be rendered against them for the amount of the judgment obtained against the defendants; which rule on the 22d of December, was answered by the garnishees averring that the thirteen bales of cotton and the proceeds of the fifty-eight bales, were transferred and delivered to them because the defendants were indebted to Lambeth & Thompson in a large sum of money varying at different times from $8000 to $20,000 since 1838, for advances in money, acceptances, &c., by them made to said defendants, and that the same were thus transferred as set forth in their answers to the interrogatories already filed.

On all these issues, the court below first rendered a judgment in favor of the intervenors, sustaining their intervention and ordering the proceeds of the slave Edmund to be paid to them in part satisfaction of their claim against Martin & Aiken; and afterwards rendered another judgment discharging the rule taken by plaintiff on the garnishees. From these judgments, the plaintiff appealed.

This case presents three very distinct matters in controversy between the parties now before us:

1st. The claim set up by the intervenors to the proceeds of the slave Edmund, by virtue of the transfer made to them by J. R. Aiken, as creditors of the late firm of Martin & Aiken.

2d. The right contended for by the garnishees to apply the thirteen bales of cotton found in their possession or their proceeds, to the payment of the advances by them furnished to the defendants previous to the attachment.

3d. Their right to keep the proceeds of the fifty-eight bales of cotton attached in their hands at the suit of defendants

against Reynolds, and transferred to them to be applied to the satisfaction of the debt due them by said defendants.

The solution of these questions will depend mainly on the application of the general rule so often sanctioned and recognized in our jurisprudence, that when the owner of property has lost all power over it, and cannot change its destination, his creditors cannot attach; 9 *Martin*, 316; 4 *Martin*, N. S., 657; 7 *Idem*, 137; 2 *Ra. Rep.*, 514; 13 *Idem*, 570; 15 *Idem*, 465. And so, if the defendants themselves could not have taken the property in dispute out of the hands of the garnishees, it is clear the plaintiff cannot.

I. The alleged right of the intervenors to the slave Edmund or its proceeds is predicated upon a deed of transfer or assignment, executed in their favor by John R. Aiken, in the state of Mississippi, on the 1st of May, 1838, *as surviving partner* of the late firm of Martin & Aiken, and for the purpose of securing the payment of a debt of $15,000 to $20,000, due by the said firm to the intervenors; in consequence of which, the said Aiken, as survivor of the firm, transferred, assigned and delivered to the intervenors and James Gwinn, certain property and slaves, (the slave Edmund among others,) to have and to hold the same absolutely and forever until the debts therein specified are discharged. The parol evidence, which comes up unobjected to, shows that the deed was executed on the day of its date; that the debt, to secure which the transfer was made, was then justly due by Martin & Aiken to the intervenors; that the slave Edmund belonged to Aiken as survivor of the firm; that he never belonged to the defendants, and that said slave was brought down to New Orleans where he was attached. From this testimony, it appears to us clear that, although the intervenors have not established a direct legal title to the slave attached, yet the same is not and has never been the property of the firm of Aiken & Gwinn, and cannot be attached by their creditors. The intervenors are creditors in a large amount of the firm of Martin & Aiken, to which the slave belongs, and if so, there is no necessity of enquiring into

EASTERN DIS.
*May*, 1841.

POWELL
*vs.*
AIKEN & GWINN
ET AL.

Where garnishees are in possession of a slave transferred to them in Mississippi, by the surviving partner, in payment of a debt *due by the firm*, they will hold it against an attaching creditor of a new *firm*, of which this partner is a member.

EASTERN DIS. the nature of the right which they may have acquired under
May, 1841. the transfer from Aiken, as the proceeds thereof must be exclu-
POWELL sively applied to the discharge of the debts due by the said
vs.
AIKEN & GWINN partnership, in preference to those of the new firm of Aiken
ET AL. & Gwinn; *La. Code, art.* 2794; 10 *La. Rep.*, 348; 12 *Idem*,
374; 13 *Idem*, 281.

It is contended, however, that the *probata* does not agree
with the *allegata*, and that the intervenors having alleged in
their petitions that the slave was the individual property of
John R. Aiken, their allegations must be taken as the highest
proof of the fact that it did not belong to the firm of Martin &
Aiken. Those allegations ought, in our opinion, to be taken
in connection with the act of transfer annexed to the petitions
and therein referred to; and there it is positively stated that the
Evidence property therein described, belongs to the firm of Martin &
which is intro- Aiken, and is transferred by Aiken as the surviving partner of
duced and re-
ceived without the said firm; moreover, the evidence which establishes this
opposition or
objection, altho' fact was introduced and received without any objection, and it
contrary to and
beyond the alle- is a well settled rule that a party, who, without·opposition suf-
gations contain-
ed in the plead- fers evidence to be adduced contrary to or beyond the allega-
ings, the adverse tions contained in the pleadings, is bound by its effect; 11 *Mar-*
party is bound
by its effect. *tin*, 26; 6 *Martin, N.S.*, 86; 1 *La. Rep.*, 301.

II. The answers of the garnishees to the interrogatories pro-
pounded to them by the plaintiff, establish satisfactorily that
the thirteen bales of cotton were sent to them by the defendants
in the usual course of business, *to pay advances which they had
made* previously to the defendants; this evidence, far from be-
ing contradicted, is corroborated by the testimony of a witness
Where cotton who states that the thirteen bales *were received* under the ar-
is shipped to rangement that the garnishees should accept the defendants'
consignees, who
are entitled to a drafts at short sight and date, which were to be met by cotton
right of privi-
lege, so that the to be shipped to them, &c. And on this point, we cannot hesi-
consignor or tate to conclude that, as the defendants had no further control
owner could not
take it out of over this cotton, which they could not take out of the hands of
their hands, *his*
*creditor cannot* the consignees; and as said consignees were entitled to their
*attach it in their*
*hands.* right of privilege on the same, the plaintiff could not attach it;
*La. Code, art.* 3214; 14 *La. Rep.,* 477.

III. This last point does not seem to us to present any serious difficulty: the right of the garnishees to the proceeds of the fifty-eight bales of cotton, is clearly established by their answers to the interrogatories; it is shown that this cotton, which was in the possession of the garnishees, had been attached at the suit of the defendants against Reynolds; that as soon as judgment was obtained, said defendants gave an order that the amount of the recovery should be paid over to Lambeth & Thompson, and credited on their account as so much paid on the large debt which the defendants owed them. No attempt was made to contradict their said answers; they are explicit and satisfactory, and although the order is dated one day previous to the issuing of the first attachment in this suit, yet Lambeth & Thompson were not made garnishees with regard to the proceeds of this cotton, before the 20th of May, 1840; and it was not until said garnishees answered the interrogatories propounded to them at that time, by the plaintiff, that said proceeds became a subject of controversy between the parties. We are not prepared to say that it was not a fair transaction, and that its object was to defeat the plaintiff's proceedings. It is perfectly clear that the defendants were bound by the order which they had given; that it was not in their power to change the destination of the money recovered against Reynolds; that it was not necessary to notify Reynolds of the transfer of a claim over which he had no further control under the judgment obtained against him; and that the right of Lambeth & Thompson thus vested previous to the levying of the attachment, could not be destroyed or in any manner affected by the plaintiff's subsequent proceedings.

It does not appear to us that the judge *à quo* erred in any part of the judgment appealed from.

It is therefore ordered, adjudged and decreed that the judgment of the Commercial Court be affirmed with costs.

*Garland, J.* dissenting:

As I have not been able to convince myself of the correct-

EASTERN DIS.
*May*, 1841.

POWELL
*vs.*
AIKEN & GWINN
ET AL.

So where the defendants gave an order on their attorneys, to pay over the proceeds of certain cotton, which they had attached, to the intervenors, to be credited in their (defendants') account, it is good against subsequent attaching creditors of defendants.

EASTERN DIS. ness of the conclusion the majority of the court have ar-
May, 1841. rived at on one branch of this case, I shall state the reasons of
POWELL   my dissent.
vs.
AIKEN & GWINN   The majority of the court think the intervenors, Lambeth &
ET AL.   Thompson, are entitled to a privilege and preference over the
attaching creditor on the proceeds of the thirteen bales of cot-
ton shipped by the defendants to the intervenors. On this
point I differ with them.

The intervenors are the factors or commission merchants in
New Orleans of the defendants, who are merchants in Vicks-
burg. The clerk and book-keeper of the intervenors says,
they have had a running account with defendants for two or
three years, in which the balance has always been against
them. The present balance is about $38,000, and since Janu-
ary, 1840, has not been less at any time than $6000. A great
deal of the business of Lambeth & Thompson consists in
making advances on cotton. They are sometimes made in
cash, sometimes by acceptances and sometimes by advancing
cotton bagging, rope and provisions. Has never known them
to make advances except when property was in hand or ex-
pected. Defendants are merchants in Vicksburg and have
been in the habit of purchasing large quantities of cotton
from their country customers. The arrangement as to the
business between the parties, is, Lambeth & Thompson accept
drafts at short sight or date, with the understanding they are to
be met by cotton to be shipped them. Lambeth & Thompson
send the defendants bagging, rope, and provisions to be paid for
by cotton. From two to three thousand bales of cotton were
received from August, 1839, to August, 1840, under this ar-
rangement. Bills at long dates are sometimes accepted. The
cotton is generally sold as soon as it arrives and defendants
have no control over it. They could not take the cotton out of
the hands of Lambeth & Thompson until they paid them.
The bills of lading are in all cases sent to Lambeth & Thomp-
son. The understanding is not in writing and he derives his
knowledge of it from the tenor of the defendants' letters and

conversations with them. Knows of no specific or particular <span>Eastern Dis. May, 1841.</span> advance on the thirteen bales of cotton in question; they were received under the arrangement mentioned.

<span>Powell vs. Aiken & Gwinn et al.</span>

The intervenors in their answers to the supplemental interrogatories say, the debt of defendants to them accrued by making them advances, and they bound themselves to forward cotton and pay cash to meet said advances. The thirteen bales of cotton came into their hands under that agreement. They then proceed to say, they are factors, the defendants are merchants at Vicksburg, who purchase cotton which they consign to them. They making advances, &c. "The arrangement between Aiken & Gwinn and Lambeth & Thompson was based on a well known custom to both parties. There was no written agreement."

It is not shown that the intervenors made any specific advances on these thirteen bales of cotton, yet they claim a privilege on them and the judgment of the court allows it.

Previous to the adoption of the Louisiana Code, by the mercantile law, factors were entitled to a lien on produce or goods, or their proceeds in their hands, for a general balance of accounts; 8 Martin, 486; 9 Idem, 297; 1 Martin, N. S., 261; 1 La. Rep., 363; 2 Idem, 440.

The article 3152 of the Louisiana Code says, privileges can only be claimed for those debts to which it is expressly granted. The article 3214 says "every consignee or commission agent, who has made advances on goods consigned to him, or placed in his hands to be sold for account of the consignor, has a privilege for the amount of *these advances*, with interest and charges on the value of the goods, if they are at his disposal in his store, or in a public warehouse; or if, before their arrival, he can show, by a bill of lading or letter of advice, that they have been despatched to him."

When the legislature adopted these articles of the Code, I not only infer, but it is evident from the expressions used, some change in the law was intended. The intention to my mind is clear that the privilege was intended to apply to specific ad-

*Margin note:* It is not shown, that the intervenors made any *specific advance* on the thirteen bales of cotton, and are therefore not entitled to a privilege, under the article 3214 of the Code; consequently the plaintiff's attachment ought to hold the property.

EASTERN DIS.
May, 1841.

vances alone, and so thought this court in the cases in 13 La. Rep., 490, and 14 Idem, 8; and in the latter volume, in the case of Turpin vs. Reynolds, 473, the principle of privilege was carried a step further; but the decision in this case goes beyond it, which in my judgment abolishes the article 3214 entirely; and establishes the privilege for general balances, as the law existed before the adoption of the Code. To this as a question of law or expediency, I am entirely opposed.

As relates to persons out of the State, this is now a question of no consequence, as the legislature by an act passed at the last session gives a privilege to factors for balances due by non-residents; Acts, 1841, pp. 21, 22; but as it relates to our citizens, the question is an important one, as factors become a class of privileged creditors, although the law says no man shall be so, except by express legislation.

In regard to the proceeds of the thirteen bales of cotton, I think the plaintiff ought to recover, and think the judgment should be so amended.