JONATHAN MONTGOMERY, Executor of William Nott, deceased, and others *v.* JAMES S. BRANDER and others.

Defendants, commission merchants, having contracted to sell a quantity of cotton belonging to their principals, to a third person for cash, before payment of the price or delivery, plaintiffs seized, in the hands of such third party, under a *fi. fa.* in a judgment aganst defendants, all the property, rights and credits of the latter. *Held,* that the vendors not being bound to deliver the cotton until the price was

paid (C. C. 2463,) nothing was seized; and that the vendee might have disregarded it, and have paid the price to defendants and received the cotton.

The property of the principal cannot be seized under execution by a creditor, even to the extent of the consignee's privilege; the creditor of the consignee in such a case, must attach or seize the claim of his debtor in the hands of the consignor.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*G. Strawbridge*, for the appellants.

*T. Slidell, Benjamin*, and *Grymes*, for the defendants and intervenors.

MARTIN, J. The plaintiffs, judgment creditors of the defendants, seized in execution in the hands of Bergerot, all the property, rights and credits of their debtors, who had sold him six hundred and twenty bales of cotton, which they had received for sale, as commission merchants from several planters in the neighboring States. On his communicating the seizure to the defendants, and informing them that it would not be in his power, in consequence thereof, to comply with the terms of his purchase, to wit, a cash payment, they deemed it their duty to protect the interest of the planters, by preventing the cotton from being applied to the payment of their own, the defendants', debts, and made a sale of the six hundred and twenty bales, to Price, who thereon delivered to them, in part payment, a check for twenty thousand dollars, which was duly paid. The petition, alleging the nullity of the sale to Price, as fraudulent and collusive, prays for the sequestration of the cotton, and that the defendants, and Price, and Bergerot may be cited, in order that, contradictorily with them, the rescission of the sale to Price may be decreed and the plaintiffs be paid out of the proceeds of the cotton, or that the sale to Bergerot may be confirmed, and the proceeds applied to their claim. The sequestration was issued. Bergerot intervened, admitted his purchase of the cotton, and the seizure in his hands by the plaintiffs, stating that a number of bales were marked by his directions, and put in his name on the books of the press where it is lodged. He alleged the simulation of the sale to Price, and prayed that the cotton might be delivered to him, on his depositing the price in court. Price intervened, as well as the consignors of the cotton to the defendants. The court ordered the cotton to be delivered to Price, on

his giving bond with security, which was done. It directed the dissolution of the sequestration obtained by the plaintiffs ; that as between the plaintiffs, and Price, and Bergerot, there be judgment against the former ; that as between the plaintiffs and the consignors of the cotton, there be judgment for the latter, who are decreed to be entitled to the proceeds of the cotton, in proportion of their respective interests therein ; that as between Bergerot and the defendants, there be. judgment for the latter ; and the costs to be paid by the plaintiffs, who have appealed.

It does not appear to us that the First Judge erred, in concluding that the plaintiffs had not seized anything in the hands of Bergerot. His vendors were not bound to deliver the cotton until they had received the price ; (Civil Code, art. 2463 ;) and he might have disregarded the seizure in his hands, and have paid the price, and received the cotton ; and this would have rendered the seizure abortive. Judgment was properly given in favor of Price, to whom the defendants might well have sold their cotton to raise money for their consignors, or pay their own debt. It appears that Price actually paid the amount of his purchase, within a very small fraction, indeed, if not entirely. The counsel for the plaintiffs and appellants has, however, complained, that the court erred in not giving judgment in their favor for the claim of the defendants on the consignors of the cotton. The property of the principal cannot be seized by a creditor of the consignee, even to the extent of the consignee's privilege. The creditor of the consignee, in such a case, is driven to an attachment or seizure in the hands of the consignor, of his debtor's claim.

<em>Judgment affirmed.</em>

*G. Strawbridge,* for a re-hearing. The facts, which have never been contested, are these :

The plaintiffs, with a judgment for upwards of $10,000, had their execution levied in the hands of Bergerot, who had purchased 620 bales of cotton from defendants. This being communicated to defendants, efforts were made on their part to induce Bergerot to cancel the sale, with a view to defeat the seizure; and it is distinctly proved that Wright, one of the firm, proposed to him that a sale should be made to some third person by the defendants, from whom Bergerot might again purchase at a small advance, which should be made good to him. This proposal he refused, by

the advice of his counsel, when Wright declared he would sell the cotton, and pay Bergerot damages, according to the advance of price.

The seizure was made on Saturday, about three o'clock: this negotiation took place on Sunday; and on Monday morning, about 6 o'clock, a transfer was made on the books of the Lower Cotton Press, to Thomas K. Price; and a previous transfer of a part, or of the whole, to Bergerot, was erased. It is also in proof, that under the sale to Bergerot, they were, on Saturday, employed in turning out of the press and marking the bales; 160 of which had Bergerot's mark put on them, and they were prevented from completing it and weighing them by a shower of rain. Some knowledge of these movements having come to plaintiffs' knowledge, a writ of sequestration was taken out, and the cotton taken, when it was bonded by Price in opposition to Begerot's application to take it and deposit the price in court.

On the trial, Price produced a check and receipt for the round sum of $20,000; he produced no bill of parcels—showed no weights—no broker had intervened—no fractional sum had been paid, to meet the difference. It stands in proof, a sale of 620 bales of cotton for $20,000, naked of any other circumstance in its favor; and lastly, it may be added, that in the argument in this court, it was avowed that Price's object in the sale was, to defeat the plaintiffs' seizure.

What I first complain of, is, that in the statement of facts made by the court, not one word has been said of, nor from any thing therein appearing, could it be gathered, that any fraud or simulation was in question, or any circumstance shown to support such a charge; but that Thomas K. Price was a bona fide purchaser.

I complain also, that in the same statement no notice is taken of another fact, viz., that by an account furnished from the books of Brander, McKenna & Wright, it was shown and agreed as a fact, that the intervening owners of the cotton were indebted to them in the sum of $5,611 16 for expenses and advances—omissions the more remarkable, as they were the main reliance of the plaintiffs, and the Judge below had expressed his conviction that the sale was simulated. With these matters made straight, let us proceed to an examination of the legal principles laid down by the court, which are three, viz.—

*First*—The vendors (Brander & Co.) were not bound to " deliver the cotton until the price was paid." C. C. 2463. The rule is inexact and inapplicable to the case, from the omission of the fact that a third person had seized the price. Art. 2539, of the Civil Code, provides, that if the buyer does not pay the price, the seller may sue for the dissolution of the sale, so that wherever an attachment or seizure is made on the price of a sale, the vendor may, if the goods are not delivered, refuse such delivery, or if delivered sue for the dissolution of the sale, and thus defeat his creditor. I cannot forbear the expression of my surprise at such a fallacy. The law of 1839, page 166, providing for taking debts in execution, has this clause:— " A copy of this order, with a receipt of the Sheriff, shall be delivered to said third person (Bergerot) and shall be deemed equivalent to a receipt from the debtor (Brander & Co.) himself." Should it be said this is only applicable to the proceedings under this particular law, I answer, not so; the whole system of taking debts under seizure or attachment, is from its very nature a payment to, or for, or in discharge of the defendant, or in legal effect a payment *to him*. Suppose A., under a judgment against B., issues execution against C., a debtor of B. A.'s judgment is for

$1000 ; he collects B.'s debt due by C. for $500 ; can he, A., issue a second execution for the full $1000, or is it paid and satisfied to the amount of one half?

But even this is unnecessary—the articles quoted do not say the price must be paid *to the vendor*—it must be paid, and it may be paid to a seizing creditor, as has been shown, as legally and effectually, as to the vendor. It is untrue therefore to say the seizure prevented Bergerot from paying the price, or authorized Brander & Co. to withhold the thing sold, much less treat it as a nullity and sell it to another. Whatever Bergerot paid would have been a compulsory payment under legal process—it would have been a payment for Brander & Co., and the latter must have credited him for so much of the price of the cotton. All doubt on this head would have been put at rest, by an application to the court to have it delivered to him on payment into court of the price. Moreover, art. 2428, C. C., declares, that the sale of property in litigation has no effect. So held this court in Long and French, 13 La. 257 ; in Harvey and Grymes, 8 M. R. 395, and 6 La. 58. They held that property attached could not be mortgaged. One would suppose property in execution fell under the same rule. In fact it has been so adjudged in Duffy and Townsend, 9 M. R. 585. At present the doctrine is not that the sale is null, but that " *it renders the seizure abortive.*"

*Second Proposition.* " The vendee might have disregarded the seizure in his hands, paid the price and received the cotton, and thus would have rendered the seizure abortive."

Payment made by a debtor to his creditor, to the prejudice of a seizure or attachment, is not valid with regard to the creditor seizing, &c.; those may, according to their claims, oblige him to pay anew, and he has in that case recourse to the creditor alone.   C. C. art. 2145.

I have placed this proposition in juxtaposition with an article of the Code, and I feel it would be difficult to make an argument to show their utter inconsistency.

*Third.* I pass to the third proposition. " The property of the principal cannot be seized by a creditor of the consignee, even to the extent of the consignee's privilege. The creditor of the consignee, in such case, is driven to the attachment or seizure in the hands of the consignor of his debtor's claims." Most assuredly the consignor's property cannot be attached to pay the consignee's debt. A man's property is the common pledge of his own creditors, but not of his neighbor's—but his own property of whatever kind is so subject. The execution required the Sheriff to seize the property of Brander & Co. The only question therefore was and is, had he property to the extent of $5,611 16 in Bergerot's hands. The fact agreed upon, and not open to contradiction, shows he had. In the argument at bar, I stated, that not less than an hundred cases had been so ruled by the Judge of the Commercial Court, and that the C. C., art. 3214, gave to every factor a privilege on the property in his hands to the amount of his expenses and advances. In these cases, which generally arose in suits by attachment of property for debts of the consignor, the factor intervened and claimed to be paid out of the proceeds of the goods with privilege, and wherever he made out such a case, it had been allowed ; and repeated appeals to this court has affirmed the rule. I will only refer to the case of Powell and Gwynn, 18 La. 321, it being the last reported, and an appeal from the Commercial Court to this, of which I shall say more hereafter. From these cases it results, that the factor who has sold goods, has a vested interest in the price,

recognized in law as distinct and separate from the portion due to the consignor; that it is a debt due to him, for there can be no privilege where there is no debt—in short, that it is his property. He may assign or transfer it as other debts. If he fail, it passes to his syndic; if he die, to his executors, who put it on his inventory; and even according to this very inexact proposition, it may be attached or seized as his property, provided the consignor be the garnishee, and not the person in whose hands it is. Upon what law or principle is it, that the same thing which will be adjudged to the factor in a suit where he intervenes, and given up as his property, is treated as a shadow, as nothing, when he is made defendant? Surely not because he has no property in it—his right does not arise from the suit, which is only a mode of enforcing it. It depends on the law, and he must have it alike, whether plaintiff, or defendant, or intervenor.

But it must be seized or attached in the consignor's hands. The said intervenors live all over the cotton country, from Tennessee to Texas; some own three, some five, some fifteen or twenty bales. Under such a rule, the creditor must bring fifty suits, in some half a dozen different States, for this sum of $5,600. Leaving this out of view, on principle alone, I should think the seizure should be made where the fund was found, as in other cases of seizure or garnishment. Let us look, however, both to precedent and the Code: they are clear enough.

Returning to the case of Powell and Gwynn. At page 327 we find this striking language: "The solution of these questions will depend mainly on the application of the general rule so often sanctioned and recognized in our jurisprudence, that when the owner of property has lost all power over it and cannot change its destination, his creditors cannot attach it, and so if the defendants themselves, (the consignors) could not have taken the property out of the hands of the garnishee (the consignees,) it is clear the plaintiff cannot." Further on it is decided, that the owner could not take it out of the factor's hands where it had been sent to pay advances, and that the plaintiff (his creditor) could not. How tallies this with the rule laid down in this case? How can I attach Brander & Co.'s, debt in the consignor's hands, under the rule that the latter could not withdraw it from them or under this contract in Bergerot's hands, unless by satisfying the debt? Is it not plain that if I had made the owners garnishees, and proposed to them the interrogatory, Are you indebted to Brander & Co.? they must have answered No, that they are indebted to us. Is it not equally plain of Bergerot's debt, that the price could not have reached them till Brander & Co's privilege was satisfied, and that in no case could I seize in their hands. Add to this, that art. 2992, of the Civil Code, gives the mandatory the right to *retain* out of his principal's property the sum due him. How are we to settle these contradictions? Simply by reading the *whole* of the article under which these rights of the factor are established—the last clause of which provides, that "This privilege extends to the *unpaid price* of the goods which the agent or consignee shall have received and sold." Brander & Co. then had a privilege on the *unpaid price* of the cotton sold. Where was he to seek for the unpaid price? In the hands of the consignors, say the court. To my limited view, when the unpaid price reaches the owner's hands, 't is no longer unpaid. I should look for the unpaid price in the hands of the purchaser, exactly where I did look for it in Bergerot's.

Before quoting this article, let me urge its application to the first proposition— "the privilege is on the unpaid price." No distinction is made between a cash sale

and a sale on credit: *Ubi lex non distinguit nec non debemus nos distinguere;* and where a seizure has been made of a price secured by a' 60 days' note, 't is just as good a cause of annulling the contract as in a sale for cash, and equally renders the seizure abortive. Toul. vol. 7, speaking of the case where one creditor had received something to the prejudice of a seizing creditor, concludes thus : *Le créancier lui répondrait avec avantage que si la vente est parfaite, et la propriété acquise de droit à l'acheteur par le seul consentement, quoique la chose n'ait pas été livrée, ni même le prix payé, ce principe n'est vrai, dans toute son étendue, qu'entre les parties et à l'égard du vendeur."* No. 34, page 54.

And here I might conclude the argument, did not the ground by me deemed the strongest remain untouched. Let me here ask, (leaving out of question the plaintiffs' seizure,) could Bergerot, under the proof on record, have compelled Brander & Co., to a specific performance, and *vice versa.* No one, I think, will deny it. How then does the sale to Price vary it? It brings up the identical case put in art. 1916, of the Civil Code, of a second sale, the delivery under the first not being made. Who is under that article the second purchaser, whom the law protects— "a bona fide purchaser, without notice of the first sale." The court cannot therefore pass this matter by. Poth. on Ob., No. 153, is more explicit—his language is, " Observe, however, that if the debtor was not solvent at the time of transferring the thing to another which he was obliged to give me, I may proceed against the person who so acquired it to procure a rescission of the sale made to him in fraud of my claim, provided he was privy to the fraud, in case his acquisition was an onerous title ; if it was a gratuitous title, his purity would be unnecessary." Now I ask an examination of the facts in the light of plain common sense. The whole matter occurred between Saturday, after the bank hours, and Monday at 6 A. M. The sale undoubtedly was made on Sunday afternoon, or on Monday before sunrise, and the transfer to Bergerot erased ; $20,000 are given for 620 bales of cotton, 160 of them with Bergerot's mark on them ; their assorted delivery no more shown than Bergerot's, for there is no proof they ever were weighed. On Monday morning, after the transfer to Price, Wright and Bergerot met, and to Bergerot's reproaches Wright replied he could do no more than he proposed in his letter ;—that letter proposed, " that Bergerot should have the cotton by paying the same price he originally gave—that Wright had solicited the person to whom he had made the second sale to let Bergerot have it, and that he had consented on receiving one-eighth of a cent for his trouble and risk, and it was now ready for delivery." This accommodating friend was Thomas K. Price, who buys cotton on Monday before sunrise, by hundreds of bales without weighing, and pays $20,000, without knowing what his bill amounts to—the person designated by Mr. Wright on Sunday, " to whom he would sell any how."

Suppose however, both he and Mr. Wright spotless. Have not Brander & Co. a privilege both on the cotton, and its proceeds, under the sale to Price? Has not Mr. Price bonded it, and if he has paid the whole price, paid it in prejudice to the seizure of Nott. Why is he not liable on this score? And why may I not sue him ? I refer to art. 1964 and the authority of Pothier, as above, to meet this objection.

*Re-hearing refused.*