## TURPIN *vs.* REYNOLDS.
## HOBSON AND GOOCH, GARNISHEES.

##### APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

The privilege given to factors, in article 3214, of the Louisiana Code, is intended to aid the interests of commerce ; and the word *advances,* used therein, is not to be restricted in its meaning to actual disbursements, but must be construed in an enlarged sense, with reference to commercial usage, and include *acceptances* not yet paid.

So, where factors or commission merchants accepted drafts on the faith of the defendant's promise to ship and consign a certain quantity of cotton : *Held,* that the consignees will hold the cotton, so consigned, against the attaching creditors of the defendant.

The plaintiff instituted suit against the defendant, Reynolds, on his check for three thousand dollars, drawn on the Union Bank of Mississippi, and duly protested for non-payment, and attached two hundred and fourteen bales of cotton, in the hands of Hobson & Gooch, commission merchants in New-Orleans. They were duly cited as garnishees, and required to answer interrogatories.

The garnishees intervened, and alleged, that they had received the two hundred and fourteen bales of cotton,

attached, on the 19th February, 1839, with the bills of lading, on consignment, in consequence of a previous agreement, under which they had accepted sundry drafts to a large amount, on account of cotton to be shipped to them by the defendant. They claimed the right to hold the cotton under these acceptances and agreement.

On the evidence adduced, the parish judge decided :

1. That it was clearly shown and established, that the intervenors had made advances to a large amount to the defendant, G. W. Reynolds, on cotton to be sent to them from Mississippi.

2. That, especially, on the shipment of the two hundred and fourteen bales of cotton attached, the bills of lading were received before the attachment was served.

3. That the amount of acceptances, and since paid by the intervenors on the faith of this shipment, greatly exceeded the value of the cotton attached.

There was judgment in favor of the intervenors, and the plaintiff appealed.

*T. Slidell*, for the plaintiff, contended, that the liability which the intervenors allege they came under to the holders of defendant's paper, is not real ; that it was, in fact, no advance or payment, and nothing more than an accommodation endorsement.

2. There was no pledge of this cotton, so as to make it liable to the claim of the intervenors ; none of the formalities of the contract of pledge were complied with. There was no delivery. It is essential in the contract of pledge, that the creditor be put in possession of the thing given in pledge. Here, the cotton was on the defendant's plantation, in Mississippi, when this pretended pledge was made.

There was no sale of the cotton to the intervenors, and there was no advance, further than endorsing defendant's drafts. But they allege a pledge and sale, when the evidence shows there was neither.

4. They cannot claim a privilege as commission merchants, for they sued as owners, and not a word is said about

a privilege, in the pleadings. But, if there had been, they
do not come within the law. *Louisiana Code*, 3214.

*I. W. Smith*, for intervenors and appellees.

1. The garnishees and intervenors deny they have any property of defendant, and swear to the facts from which they draw this inference. This answer, made under oath, makes full proof of the facts contained in it, until the plaintiff shows its falsity, either by positive written proof, or by two witnesses. *Code of Practice*, 264. This he has not shown.

2. The plaintiff failed to establish the interest of Mr. Snodgrass, in the event of this suit. Before he became a partner, the bills were accepted by the agent of the garnishees.

3. The defendant's letter was evidence as part of the *rei gestœ*. The bill for ten thousand dollars, was accepted on this letter, and was an advance on the two hundred and fourteen bales, then received by the garnishees.

4. The first endorsers names were in blank. The subsequent ones, though special, might be stricken out. It was even unnecessary to strike them out, the acceptors having paid the bill after it had been put in circulation. *Chitty on Bills*, 637.

*Morphy, J.*, delivered the opinion of the court.

The plaintiff sued out an attachment against defendant, a non-resident, and cited, as garnishees, Hobson & Gooch, commission merchants, trading in Vicksburg, in the state of Mississippi, under the firm of " Gooch & Hobson," and in this place, under the commercial name and firm of " Hobson & Gooch." The latter answered, averring, that they had nothing in their possession belonging to the defendant, unless it should be considered that two hundred and fourteen bales of cotton, attached in their hands by the sheriff, were the property of defendant, which they denied, and they annexed to their answers a copy of their petition of intervention, previously filed. In this petition, the interpleaders state, that in consequence of previous arrangements, made in Vicksburg, and which they set out at full length, they had agreed to accept, and did accept, in New-Orleans, bills of

exchange, drawn by defendant on them to a large amount, on the faith of the defendant's promise and engagement to forward and consign to them, in New-Orleans, six hundred bales of cotton, of which the two hundred and fourteen attached were a part ; that acceptances of defendant's drafts, to an amount greatly exceeding the value of these two hundred and fourteen bales, had already been made by them, and that they were in possession of the bill of lading and cotton shipped to them, before plaintiff levied his attachment on this cotton ; that by reason of said advances, and the transfer made to them in Vicksburg, by defendant, of the six hundred bales of cotton, they had an absolute right to the possession and property of the cotton attached.

The evidence shows, that the writ of attachment was executed on this cotton on the 21st of February, 1839 ; that the bill of lading was placed in the hands of the garnishees, on the 19th, and the cotton itself stored in their name, and for their account, in the press of Tilghman & Barnes, on the 20th. Leaving entirely out of view the endorsements given by the garnishees on part of the bills, and their negotiation in Vicksburg to procure to the defendants their amount in cash, the evidence shows, that previous to the attachment here, they had accepted defendant's drafts, to an amount greatly exceeding the proceeds of this parcel of cotton, which are said to amount to about ten thousand thirty-two dollars and forty-seven cents. It is also shown, that this cotton was forwarded to the garnishees, in pursuance of their promise to accept defendant's drafts.

These facts would seem to bring the intervenors completely within the purview of article 3214, of the Louisiana Code, but the plaintiff in attachment objects :

1. That the advances spoken of in the above cited article, mean an actual disbursement of money, and not a prospective obligation to pay money by the factor.

2. That by their pleadings, intervenors do not claim the privilege conferred by our code, but claim the cotton as owners, in which capacity they have failed to show any right, to it.

I. The privilege given by article 3214, of the Louisiana Eastern Dist. Code, was evidently intended to aid the interests of trade *February*, 1840. and commerce, and promote a liberal spirit on the part of factors, in respect to advances to their principals. Nothing indicates that the word *advances*, therein used, must be restricted to actual disbursements of money, the provision being one in relation to dealings of a character eminently commercial. The terms used in it should be understood, and construed with reference to mercantile usages. In commercial parlance, a commission merchant is said to be in advance to the planter when he has accepted his drafts, and it is very seldom, we apprehend, that advances are differently made in this country. By accepting the planters' drafts, the merchant is primarily liable for their amount, and is as much entitled to be secured against his liability, as if he had transmitted the money to the drawer. And what is a bill of exchange but an equivalent for the transmission of money from one place to another? The principal who negotiates a bill of exchange, on the credit of a promise to accept, is in possession of the amount even before its actual acceptance. It is customary, we understand, among merchants, when they wish to restrict the meaning of the word *advances*, to actual disbursements of money, to use the term *cash advances*. This enactment appears to us to be already sufficiently at variance with the *lex mercatoria* of our sister states, when it confines the lien given to factors to specific advances, made on the very goods consigned to them, or placed in their hands for sale. We conclude, then, that the word *advances*, not being in any way qualified, we believe it our duty to give it that enlarged sense which best comports with the policy of the provision itself, and the general convenience and usages of trade.

TURPIN
*vs.*
REYNOLDS.

The privilege given to factors, in article 3214 of the Louisiana Code, is intended to aid the interests of commerce; and the word *advances*, used therein, is not to be restricted in its meaning to actual disbursements, but must be construed in an enlarged sense, with reference to commercial usage, and include *acceptances* not yet paid.

II. As to the second ground, the intervenors, it is true, allege, that in consideration of their endorsements, acceptances and negotiations in Vicksburg, in relation to these bills, the defendant had pledged, sold, and transferred to them, the six hundred bales of cotton mentioned in their petition, but, at the same time, they have averred and proved facts which

EASTERN DIST. entitle them to the privilege they now contend for. They
*February*, 1840. have clearly misunderstood the extent of their rights, as

THE STATE resulting from the facts which show neither a sale nor a
*vs.* pledge; but they have substantially proven their right to
JUDGE
BERMUDEZ. hold the property as factors, and to be paid out of the same.
So, where fac- We think that judgment should be given in their favor. 9
tors or commis-
sion merchants *Martin*, 317, *Canfield et al.* vs. *McLaughlin.*
accepted drafts
on the faith of
the defendant's It is, therefore, ordered, adjudged and decreed, that the
promise to ship
and consign a judgment of the Parish Court be affirmed, with costs.
certain quantity
of cotton : *Held,*
that the consign-
ees will hold the
cotton, so con-
signed, against
the attaching
creditors of the
defendant.