WILLIAM M. LAMBETH and another *v.* ROBERT G. TURNBULL.

Where a factor or merchant accepts a bill on the faith of produce consigned to him, it must be considered as an advance on it, and he has, for the amount thereof, the same privilege as though the advance had been made in money ; and other creditors, who have no privilege, cannot take the property from him, without paying his advances.

Where property has been shipped to consignees entitled to a privilege thereon, so that the consignor or owner cannot take it out of their hands without paying their claims, a creditor of the owner cannot attach.

A creditor of a cousignor, who has attached property of his debtor, in the hands of a consignee, who claims a privilege for acceptances made by him on the faith of the consignment, must show, in order take the property out of the hands of the latter without paying the amount of his acceptances, that the acceptances were not made in good faith, and that the consignee is not bound to pay them.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J. The plaintiffs having a judgment against the defendant for a large amount, issued an execution, by virtue of which the Sheriff seized on the 17th of January, 1843, one hun-

dred and forty-five bales of cotton, marked S. as the property of said defendant. Whereupon, Peyton H. Skipwith, presented his petition alleging, that he was the factor of the defendant, who was, at the time the cotton was seized, indebted to him for acceptances, and advances on account of the same, to the amount of $4735 82. He further states, that previous to the seizure, the defendant had, in the State of Mississippi, for the purpose of paying a balance due, and for the purpose of meeting certain acceptances, which would shortly mature, delivered to the opponent the actual possession of said cotton, which was forwarded by his agent in his (opponent's) name, and was received, together with the bill of lading, previous to the seizure. That the value of the cotton is not equal to the balance due, and the acceptances. He, therefore, prays that the cotton may be restored to him, and the Sheriff enjoined from proceeding to sell the same.

The plaintiffs, for answer to this opposition, deny generally all the allegations, and further aver, that if the acceptances mentioned were given, it was for the purpose of covering the cotton, and protecting it from seizure by Turnbull's creditors. They allege, that no consideration was given for the drafts, nor have they ever been put in circulation. That the opponent has never paid them, nor is he bound for the same.

The evidence shows, that the opponent, in the year 1842, furnished the defendant a considerable quantity of cotton bagging, bale-rope, and other supplies for his plantation. About the last of December, 1842, or the commencement of January, 1843, the opponent accepted for Turnbull four drafts, or bills of exchange, one of which was drawn in favor of Andrew Turnbull, for $2650, payable at thirty days, and is now held by Bogart, who presented it for payment after maturity, and had it protested. A second was in favor of McKee, for $500;—a third for $600, in favor of Dahlgren ; and a fourth for $650, delivered to Jackson. The last mentioned draft being accepted, was delivered to Jackson, about the 16th January, 1843, in payment of his wages as an overseer on Turnbull's plantation ; the draft of $500 was delivered to McKee, about the same time, in payment of his wages as an overseer on another plantation. The draft of $2650, it is shown, was given to Andrew Turnbull, as a loan, he having given

his note for the amount, payable at a future period, with interest at eight per cent per annum. It is further proved, that Robert J. Turnbull was indebted to the estate of Joseph Niebert, of which Dahlgren is administrator; but whether the draft for $600 was delivered to him, is not shown. About the time when these bills were accepted, Turnbull gave an order to his overseer to deliver to P. H. Skipwith, or his order, the cotton in question. It was delivered to G. G. Skipwith, as agent of his brother, marked with the letter S. and shipped by him on the 11th January, 1843, to his principal in New Orleans, where it was seized on the 17th of January. The witness testifies, that, at the time of the shipment, the defendant Turnbull had no control, direct or indirect, over the cotton, it having been delivered to him; and that he understood, at the time of delivery, that it was to pay for advances of cash and acceptances given. Andrew Turnbull, is the brother of Robert, the defendant, and both are shown to be large planters in the State of Mississippi.

The Judge of the Commercial Court decreed, that Skipwith should be allowed the sum of $2164 77, with five per cent interest until paid; but as to the draft of $2650, he refused to allow it, because he says, there is no evidence of a consideration having passed from Andrew Turnbull to Robert, the defendant, for it; that Andrew and Robert are brothers; and the draft was not presented by Bogart, or any other person for payment, for nearly two months after it was due. From this judgment both parties have appealed; the opponent alleging, that the acceptance of $2650, should be allowed to him, and the plaintiffs, that none of the drafts should be allowed as the opponent had not paid them. In the case of *Turpin* v. *Reynolds*, (14 La. 473,) we held, that where a factor or merchant accepts a bill on the faith of produce consigned to him, it is to be considered as an advance on it, and he has, for the amount, the same privilege as though the money had been paid, and that other creditors, who have no privilege, cannot take the property from him, without paying his advances. In the case of *Powell* v. *Aiken & Gwinn*, 18 La. 328, in which the present plaintiffs were intervenors, we held, that where cotton is shipped to consignees who are entitled to a privilege, so that the consignor or owner could not take it out of their hands with_

out paying the advances, a creditor of the owner could not attach. The plaintiffs had the benefit of this principle two years ago, and cannot complain of being bound by it now. We will now suppose, that Turnbull was to go to Skipwith, (this seizure being out of the question,) and demand from him the cotton in controversy. The latter would unquestionably have a right to refuse the delivery, until he was released from his acceptances, and repaid his advances on the same ; and it would not be competent for Turnbull to say, that the acceptances were without consideration between himself and the drawees of the drafts, even if he could show, that Skipwith was a party to the fraud, or had knowledge of the want of consideration. He could not allege his own turpitude. A creditor of Turnbull can claim no more than his debtor is entitled to, unless he can show the fraudulent intent of the parties. In this case, it is not sufficient to show, that there was no consideration between Andrew and Robert Turnbull ; it must be shown, that Skipwith is not bound to pay the draft which he has accepted. His acceptance binds him to pay Bogart, the holder, against whom no charge of fraud is alleged. The argument derived from the fact, that the draft has not been paid, weighs very little in favor of the plaintiffs, as by their act, the opponent was deprived of the means placed in his hands to pay it.

We are of opinion, that the court below did not err in saying, that the opponent was entitled to hold in his hands the amount of the drafts delivered to Jackson, McKee, and Dahlgren. In relation to the supplies there is no contest. But as to the draft for $2650, we think, it did err. We do not see sufficient evidence of fraud as between Andrew and Robert Turnbull, and none at all on the part of the opponent. The judgment, besides being erroneous in this respect, is also erroneous in another. It decrees, that the opponent recover of the defendant the sum of $2164 77, with five per cent interest from date, to be paid by preference out of the property seized. Neither party asks for such a judgment, and Turnbull was not before the court. The opponent prays, that the cotton may be restored to him, to be disposed of by him, and we think he is entitled to it, or to the proceeds, if by consent of parties it has been sold.

We have not noticed the bills of exception taken to the admis-

sibility of certain portions of the depositions offered by the opponent, as we have found sufficient testimony, without adverting to the objectionable portion.

The judgment of the Commercial Court is, therefore, annulled and reversed, and it is ordered and decreed, that the one hundred and forty-five bales of cotton mentioned in the opposition, and seized by the Sheriff, be restored to the possession of the opponent, Payton H. Skipwith ; or, in case of its having been sold, that the proceeds thereof be paid to him, to be applied to the payment of the advances and acceptances made by him for Robert J. Turnbull, as mentioned in the opposition of said Skipwith ; and, after paying the same, if any balance remain, it shall be paid to the plaintiffs ; they paying the costs in both courts.

C. M. Jones, for the plaintiffs.

Peyton and J, W. Smith, for the intervenors.