## Waller *vs* Cralle.

### APPEAL FROM THE HENDERSON CIRCUIT.

*Fraud. Creditors and purchasers. Evidence. Authentication of deeds.*

JUDGE SIMPSON delivered the opinion of the Court.

THIS is an action of detinue for several slaves, instituted by the appellee against the appellant.

The plaintiff in the action claims the slaves by purchase from Armistead Long, who had married her daughter. At the time of the purchase, she was residing with Long, the vendor, where she continued to reside subsequently for a considerable period of time. No actual change of possession was made under this sale, but the slaves remained in the possession, and under the control of Long as they had been previously. At the time of the sale, Long was largely indebted, and the defendant claims the slaves in controversy, as a subsequent purchaser from Long, being also a creditor at the time of his purchase.

Sales of slaves and other personal property, where the possession does not accompany the sale, but remains with the vendor, are fraudulent and void, as to creditors and subsequent purchasers. This doctrine is too well established to require a discussion, or reference to authorities for its support. The condition of the parties at the time of the sale, the vendee residing with the vendor, does not take the sale out of the operation of this rule of law. An actual change of possession, so far as the thing sold is susceptible of it, is absolutely necessary to the validity of the sale as to creditors and subsequent

DETINUE.

*Case 5.*

*December* 9.

Case stated.

Sales of slaves and other personal property, where the possession is not taken by the purchaser, but remains with the seller, are fraudulent and void as to creditors and subsequent purchasers; that the purchaser resided with the vendor does not render the actual change of pos-

session less ne-
cessary.

The fact that the
purchaser had
notice that a pre-
vious sale had
been made, will
not affect his
right, if the sale
was made to de-
feat or delay
creditors in the
collection of
their debts.

purchasers, whenever the vendor at the time of the sale, is in the possession of the property. · And this transmutation of possession to be effectual, must not be merely nominal or momentary, but must be real, actual and open, and such as may be publicly known.

Waller was apprized of the sale to the plaintiff, Mrs. Cralle, at the time he made his purchase, it is therefore contended, that having notice, he is not such a purchaser as has a right to impeach the previous sale on the ground of fraud. Where, however, a sale is fraudulent, and made to defeat or delay creditors in the collection of their debts, a subsequent purchaser from the fraudulent vendor is not affected by notice of the fraudulent sale and conveyance: (*Roberts on Fraud*, 16; 1 *Marshall*, 209.)

Waller. made his purchase from L. J. Cralle, the agent of Armistead Long, and procured from him a bill of sale for the slaves, executed in the names of Long, Mrs. Cralle and L. J. Cralle, the agent of Long. It appears, however, that Cralle had no authority from the plaintiff to make sale of the slaves, or to execute a bill of sale in her name. Nevertheless, the execution of the bill of sale in her name, although without authority, is relied on as an estoppel on the purchaser to deny her title to the property. It cannot have this effect. The whole transaction shows that the purchase was made, and the property held in opposition to, and not under her title. The purchaser did not recognize, but on the contrary, denied its validity; although for the purpose of preventing litigation, he may have deemed it prudent to procure a transfer of her claim, supposing at the time, that L. J. Cralle was empowered to make it. He has not since looked to her for title, his purchase was not executory, but executed, and there is nothing in his attitude in relation to the plaintiff to preclude him from denying her title, and showing it to be wrongful and illegal. Besides, if the bill of sale to the defendant in the name of the plaintiff operates as an estoppel on him to deny her title, it must be on the ground that the writing is obligatory on her; but as she has repudiated it, and denied its validity, the estoppel, if one ever existed,

so far as it was created by the mere execution of the bill of sale, has been removed, it being well settled that upon the principle of reciprocity, one is not bound by an estoppel, when his adversary has placed at large the matter of estoppel: (4 *Dana*, 256.)

The slaves in controversy had been removed from this State by the directions of the plaintiff, under suspicious circumstances. They were taken by L. J. Cralle in the night, for the plaintiff, who is his mother, and hurried along with great rapidity, for the purpose of removing them to Virginia, and were in the State of Tennessee at the time they were overtaken by Waller, who there purchased them. Another creditor sued out an attachment in Tennessee, and had it levied on the slaves as the property of Long. Waller threatened an attachment also, unless some arrangement was made to secure the payment of his demands against Long. Cralle, who had the slaves in his possession removing them for his mother, was the authorized agent of Long, to sell and dispose of his property at his discretion. Finding that he would be unable to withdraw the property from the *reach* of Long's creditors, he finally sold the slaves sued for to Waller, at a price agreed upon by the parties, and took from the purchaser a written instrument, securing the right to re-purchase the slaves at the same price, within the period of eighteen months. An objection is urged to the title of Waller, on the ground that the sale so made was not voluntary, but was obtained by duress, and consequently, as purchaser, he is not in an attitude to impeach the plaintiff's title. Being however a creditor, he had a right to resort to coercive measures to secure the payment of his debt, and if the sale was produced solely by the knowledge that the property could not be taken further, it is not thereby rendered invalid, nor is there any pretence furnished for the charge of duress, particularly if the slaves were subject as the property of Long to the payment of his debts, because in that event, Waller had not only a right to threaten an attachment, but had a right to have sued it out and levied it on the property. It would therefore be strange, if his

WALLER
vs
CRALLE.

Inadequacy of consideration is not a sufficient ground to vacate a contract which is otherwise fair and egal.

Where a writing is executed to a third person who resides out of the State, after proof of its execution and delivery, it is competent al so to prove its contents.

purchase should be affected by an act on his part, which was legal ,and justified by the circumstances.

If Waller used any artifice, or made any fraudulent representations in procuring the sale and purchase of the slaves, such fraudulent conduct, would no doubt affect his purchase, and disqualify him for assailing successfully the plaintiff's title on the ground of fraud. The reduced price at which he obtained the slaves, is not itself sufficient cause to vacate the purchase; inadequacy of consideration alone being, according to the well established doctrine on the subject, insufficient to justify a rescission of a contract otherwise fair and legal. In this case too, any unfavorable inference on this ground, is repelled by the fact, that the right to re-purchase at the same price at any time within the period of eighteen months, was secured to the vendor. But the question of fraud is one for the consideration of the jury, and so far as the instructions given by the Circuit Court to the jury on the trial left this matter to their decision, there was nothing improper; so far, however, as the validity of the purchase by the defendant was made to depend upon the supposed exercise of duress, or on the free will and consent of Cralle, as agent, to make the sale, the instructions were erroneous. The law as expounded to the jury on the other branches of this controversy, is also at variance with the principles asserted in this opinion.

Some questions in relation to the evidence will be noticed, as they may occur again upon another trial. To give in evidence a release from the plaintiff to A. Long, which became necessary in the progress of the trial for the purpose of showing the consideration upon which her purchase was based, it was proved by plaintiff that Long was a resident of the State of Virginia, and had the release in his possession after its execution; upon this proof having been made, and the execution of the writing established by the evidence of the attesting witness, the Court permitted proof of its contents to be made to the jury. In this we think the Court was correct. The release having been delivered to Long, and it being an instrument, to the possession of which he was entitled, the presumption arises that he still retains

it in his possession; and as he resides out of this Commonwealth, and the Court had no power, by its process, to enforce his appearance or the production of the paper by him, it was obviously proper to allow proof of its contents to be made on the trial.

A copy of a deed from the plaintiff to Long, was offered in evidence on the trial, and properly rejected by the Court. The deed was of record in the State of Virginia. The copy offered was from the Campbell County Court in that State. It was regularly certified by the Clerk of the Court, but the only evidence that he was Clerk of the Court at the time, or that the attestation is in due form, is a certificate of the fact by a Justice of the Peace of that county. The act of Congress regulating the authentication of records and judicial proceedings, under which this copy was designed to be authenticated, requires the certificate of the Judge, Chief Justice or presiding Magistrate of the Court, that the attestation is in due form. A certificate of a Justice of the Peace, as such, is insufficient; he may be a Justice of the County Court, but if so, he should state it in his certificate, and even then it would be insufficient, unless it appeared by the certificate, that he was the presiding Justice of the Court.

The certificate of a *Justice of the Peace* of a sister State, that one who attests a copy of a deed recorded in that State, is Clerk, is not such authentication as will authorize the reading of the copy in evidence. It is necessary that the certificate be by Judge, ChiefJustice or presiding Magistrate of the Court.

One of the slaves in controversy had been attached before it had been taken from this State, and the defendant, when he made the purchase, executed an instrument of writing binding himself to take said slave to Union county, Kentucky, and hold it subject to such decree as might be rendered in that suit. On the trial, this writing was offered in evidence and rejected. As the value of the slaves at the time of the purchase, was necessarily involved in the inquiry made in regard to the fairness of the defendant's purchase, the condition of the slaves at the time, together with the whole contract in relation to their disposition by the defendant, was matter proper to the elucidation of this question, and the evidence should have been allowed to go before the jury.

Various other questions were made in relation to the evidence, but as they may not occur on another trial, it

is deemed unnecessary to notice them in detail. It may be sufficient to remark in general terms, that evidence showing the indebtedness of Long at the time of the sale to the plaintiff, and his continued possession and control of the slaves afterwards by himself or agent, and that the plaintiff did not claim the slaves, list them for taxation, or exercise any right of ownership over them, is legal and pertinent to illustrate the questions to be determined by the jury.

Wherefore, the judgment is reversed and cause remanded for a new trial and further proceedings consistent with this opinion.

*Harlan & Craddock* for appellant; *Morehead & Reed* for appellee.

