CASE 78—PETITION EQUITY—NOVEMBER 21.

# Steir vs. Robinson & Co.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The claim of a party to goods attached as the property of another person will not be considered fraudulent when supported by the direct evidence of two witnesses corroborated by the facts, that the goods necessary to replenish the stock in the store were, from time to time, purchased in his name and on his credit, and that he kept the store insured as his own, and rented the house in which it was kept.

2. It is a well-settled principle, applicable to private sales of personal property, that where such sales are made without any change of possession from the seller to the buyer, they are fraudulent and void as to creditors; and the fact that the vendee at the time resides with the vendor, does not take the case out of the operation of this rule of law. (*Halbert, &c., vs. Grant*, 4 *Monroe*, 584; *Waller vs. Cralle*, 8 *B. Monroe*, 11.)

HAMILTON POPE,                                  For Appellant,
                       CITED—
        1 *J. J. M.*, 8 ; *Keith vs. Gore.*

BRISTOW & WHARTON,                              For Appellees,
                       CITED—
        4 *Monroe*, 584 ; *Halbert vs. Grant.*
        8 *B. Mon.*, 11 ; *Waller vs. Cralle.*
        14 *B. Mon.; Jarvis vs. Davis.*
        1 *Metcalfe; Enders vs. Williams.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

This is an appeal from a judgment of the Louisville chancery court sustaining an attachment in favor of the appellees against the property of William Traxal and his

wife, M. Traxel, and directing the sale of a stock of millinery goods, attached to satisfy the appellee's claim of one hundred and fifty dollars, with interest and costs.

The debt appears to have been contracted by Mrs. M. Traxal for goods, to be used and disposed of in a millinery business conducted in a store kept by her, and in her individual name, in the city of Louisville. For some time prior to the suing out of the attachment, said William Traxal appears to have resided in the State of California; but his wife, M. Traxel, remained in Louisville and continued to keep, either for herself or as employee, the millinery store carried on by her when the debt to the appellees was created.

After the levying of the attachment in January, 1866, the appellant, John T. Steir, claiming to be the proprietor of the store, and the owner and in possession of the goods when taken under the attachment, filed his petition, asserting his claim according to the provisions of the 257th section of the Civil Code of Practice, and gave bond for the goods as the claimant in possession.

The only important question in the case is as to the validity of the appellant's claim to the property. There is but little contrariety of evidence as to the material facts. As already stated, Mrs. Traxal kept and conducted the store in her own name when she contracted the debt to the appellees. Afterwards, in December, 1861, her daughter, Sidonia Heintz, then only about sixteen years old, although a married woman, and who had resided with her mother and been in her service in the store, bought or professed to buy of her mother the stock on hand, in consideration of about eighty dollars paid in money, and the daughter's claim for about two hundred and forty dollars for services and about forty dollars previously loaned to Mrs. Traxal. From that time, accord-

Steir vs. Robinson & Co.

ing to the testimony of Mrs. Traxal and Mrs. Heintz, the millinery business was conducted by the latter, her mother assisting her in the store until in March, 1863, when the husband of said Sidonia Heintz, who had been absent in California, returned to Louisville to remove his wife to California, and she then sold out the establishment to her half brother, the appellant, who is the son of Mrs. Traxal, for three hundred and forty-five dollars, and left with her husband for California. Since that time the millinery store appears to have been kept and conducted by Mrs. Traxal in the appellant's name, who has also, in the meantime, conducted a business in cigars and tobacco; he appears, however, to have kept up a supervision of the millinery store, and though purchases to replenish the stock were usually made by his mother, they were made in his name and upon his credit; and he appears to have rented the house and had the goods insured. His object in carrying on the business seems to have been the maintenance of his mother and her infant children, who resided with her in the store, rather than profit to himself.

The name of Mrs. Traxal upon an old show-case, which was daily placed at the door, was used as a sign after her sale to Mrs. Heintz, as it had been before, and was so used after the sale to appellant.

It is a well-settled principle applicable to private sales of personal property, that where such sales are made without any change of possession from the seller to the buyer, they are fraudulent and void as to creditors; and the fact that the vendee at the time resides with the vendor does not take the case out of the operation of this rule of law. (*Halbert, &c., vs. Grant,* 4 *Mon.,* 584; *Waller vs. Cralle,* 8 *B. Mon.,* 11.) And if this were a contest between a creditor of Mrs. Traxal and Mrs.

Heintz as to the validity of the sale to the latter in 1861, an essential question would be, whether there was or not an actual change of possession as between the mother and daughter; and as they continued to reside together after the sale, as they had done before, the solution of the question would necessarily depend on whether the sale and transfer of ownership were made in good faith or not.

But the question is not whether the sale to Mrs. Heintz was fraudulent merely, but whether the goods taken under the attachment were in fact the property of the appellant or of Mrs. Traxel. There is no question as to the validity of any sale from Mrs. Traxel to the appellant, as no such sale was made. Nor does the evidence identify the goods sold by Mrs. Heintz to the appellant as the same she claimed by purchase from her mother. Still less does it conduce to show that any of the property in controversy was included in the sale to Mrs. Heintz. It is not at all probable that goods which were on hand and for sale in a millinery store in 1861, would have remained in it in 1866. It is plain, therefore, that the correctness of the decision of the chancellor does not depend on the legal effect of any supposed sale of the goods to the appellant without actual delivery, but on another and different inquiry ; and that is, whether, from the weight of evidence, the conclusion is justified that the appellant really owned the goods levied on under the attachment, or only set up a fraudulent and groundless claim to them for the purpose of hindering and delaying the creditors of Mrs. Traxel.

Although there are circumstances developed in the cause well calculated to cast suspicion on the appellant's claim, and to detract somewhat from the credit of his material witnesses, we do not feel authorized to

determine that his claim is fraudulent in opposition to the direct testimony of Mrs. Traxel and Mrs. Heintz, corroborated as they are by the facts that the goods necessary to replenish the stock in the store were, from time to time, purchased in his name and on his credit, and that he kept the store insured as his own, and rented the house in which it was kept.

It seems to us, therefore, that the chancellor erred in adjudging a sale of the attached property to satisfy the plaintiff's claim.

Wherefore, the judgment is reversed, and the cause remanded, with directions to discharge the attachment at the plaintiff's costs.