## Case No. 6,951.

### In re HUSSMAN.

[2 N. B. R. 437 (Quarto, 140);[1] 2 Am. Law T. Rep. Bankr. 53; 1 Chi. Leg. News, 177.]

District Court, D. Kentucky. April, 1869.

BANKRUPTCY — FRAUDULENT SALE — DISCHARGE—
JUDGMENT OF STATE COURT—EVIDENCE.

1. Where an alleged fraudulent sale had been made by a debtor, and action commenced in chancery by certain creditors to have the same declared void, the bankrupt filed his petition in bankruptcy, but failed to disclose that he had any interest in the property, and the assignee in bankruptcy was made a party to the proceedings in the state court, which adjudged the sale fraudulent and void, but held attachment to have been dissolved, because sued out within four months before bankruptcy proceedings, and that the attached property vested in the assignee in bankruptcy. The same creditors opposing discharge in bankruptcy. Held, a fraudulent sale of property by bankrupt, before the passage of the bankrupt act [of 1867 (14 Stat. 517)], is sufficient or itself to preclude his discharge.

[Cited in Re Rainsford, Case No. 11,537; Re Antisdel, Id. 490.]

[Cited in Stevenson v. McLaren, 23 Minn. 113.]

2. A judgment obtained in a state court is conclusive evidence in this court of the fact ascertained by it, and binding on the court until reversed in due course of law.

3. The concealment denounced by the twenty-ninth section of the said act, embraces a concealment of title to property as well as the hiding from view of the property itself. Discharge refused.

In bankruptcy.

[1] [Reprinted from 2 N. B. R. 437 (Quarto, 140), by permission.]

BALLARD, District Judge. This case is now heard upon the specification of grounds of opposition filed by Daniel and Walker to the discharge of the bankrupt. There are nine separate grounds of opposition specified, but I do not consider it necessary to notice the second, third, fifth, seventh, eighth, or ninth, because some of them are sufficient, and the others are substantially embraced in grounds one and two. Those which I shall notice are as follows: First. The said Hussman did, on the 21st of February, 1867, make a fraudulent and pretended sale of his stock in trade, fixtures, goods, and apparatus situated in a bakery on Market street, in said city (Louisville), and valued at one thousand three hundred dollars, to one J. H. Landrath, in contemplation of bankruptcy, and with the intent to cheat, hinder, and delay his creditors. Fourth. The said Ernest Hussman wilfully and fraudulently omitted to disclose his ownership of the furniture, fixtures, goods, stock in trade, and apparatus owned by him at the time of filing his petition, and situated in his bakery * * * valued at one thousand three hundred dollars; that he wilfully and fraudulently omitted to include the same in the schedule of his effects, and has never surrendered the same for distribution among his creditors, but has fraudulently withheld and concealed the same, &c.

It will be perceived that the first ground specified is that the bankrupt made a fraudulent sale of his property prior to the passage of the act. The alleged sale was made February 21st, 1867, and the bankruptcy act was not passed until March 2d, 1867. I am of the opinion that this ground is not sufficient. The twenty-ninth section, among other things, provides that "no discharge shall be granted if * * * since the passage of this act (the bankrupt) has destroyed, mutilated, altered, or falsified any of his books, documents, papers, writings, or securities, or. has made or been privy to the making of any false or fraudulent entry in any book of account or other document, with intent to defraud his creditors, or has removed, or caused to be removed, any part of his property from the district, with intent to defraud his creditors; or if he has given any fraudulent preference contrary to the provisions of this act, or made any fraudulent payment, gift, transfer, conveyance, or assignment of any part of his property, or has lost any part thereof in gaming, or has admitted a false or fictitious debt against his estate," &c.; my opinion is that the words, "since the passage of this act," qualify all of the above alternative provisions. The grammatical arrangement of the sentence sustains this conclusion, and the reason and justice of the thing demand it. The withholding of a discharge from a bankrupt is in its nature a penalty for some improper conduct, and to refuse a discharge because of the improper conduct of the

bankrupt, prior to the passage of the bankrupt act, would be to make the act retroactive. Courts never give a retroactive construction to statutes, unless their language imperatively requires it. The construction here adopted has been approved by the district court of New Jersey. In re Rosenfield [Case No. 12,058], and by the district court of the Southern district of Ohio.

The fourth ground of opposition specified does, I think, sufficiently charge that the bankrupt concealed a part of his effects. And if the charge is sustained by the evidence, the case is brought within the terms of the statute, which declares that "no discharge shall be granted * * * if the bankrupt * * * has concealed any part of his estate." It appears that some time after the alleged sale by the bankrupt to Landrath, on the 21st of February, 1867, the opposing creditors brought suit in the Louisville chancery court, in which suit they sought to have said sale declared fraudulent and void, and by attachment and other process to have the goods mentioned in the alleged bill of sale applied to the payment of their debt. A few days after the institution of this suit, the bankrupt filed his petition in bankruptcy, but he did not in his schedules disclose that he had any interest in said goods, nor has he ever disclosed to his assignee, or to any of his creditors, that he has any such interest. On the contrary, in his answer in said suit he denies all interest in said goods, and he persists in this denial still. After the appointment of the assignee of the bankrupt, he became a party to the proceedings in the state court, and they were allowed to progress to a final decree. By this decree the said sale was adjudged fraudulent and void, and the attachment was held to have been dissolved because sued out within four months next preceding the commencement of the bankruptcy proceedings, and the attached property to have vested in the assignee in bankruptcy. Upon the order of reference, made by this court, to the register, to take proof respecting the grounds of opposition specified, the only evidence offered by the opposing creditors, consisted in a copy of the aforesaid judgment of the state court, the bill of sale to which it refers, and the schedule annexed to the bankrupt's original petition. On the hearing before me it was agreed that the judgment of the state court relates to the contract of sale above mentioned, and the whole record of the case in the state court, including the evidence, was also, by agreement, produced and read.

It is insisted by the counsel of the bankrupt: First. That the judgment of the state court cannot be read in this court. Second. That the whole record shows that said judgment is erroneous. Third. That admitting the sale to have been fraudulent, still, as between the bankrupt and Landrath it was

valid and passed the title to the property; that therefore the bankrupt, at the time he filed his petition, had no legal interest in the property, and cannot be charged with concealing it. Fourth. That the sale, if fraudulent at all, was only constructively, not positively, so, and that under no circumstances can it be maintained that a bankrupt conceals his effects who simply fails to disclose that some conveyance made prior to the passage of the bankrupt act was constructively fraudulent. Fifth. That said effects were not concealed, within the meaning of the bankrupt act; because their existence and locality were not only known to the creditors of the bankrupt at and prior to the filing of his petition, but the fact of the sale was also known—the creditors having, prior to the filing of the petition in bankruptcy, actually instituted suit alleging said sale to be fraudulent.

The state court had undoubtedly jurisdiction of the subject matter as well as of the parties. Its judgment is therefore binding on the parties, and between them and their privies it is conclusive evidence in this court of the fact ascertained by it. It so happens that the opposing creditors in this proceeding are the same creditors at whose instance the state court adjudged the sale to Landrath fraudulent. The same issue is presented in this case which was presented in that court, and the persons who are parties in this case were parties in that. I can therefore conceive of no reason which can preclude the judgment there from being conclusive here. Besides, the assignee of the bankrupt was a party to the suit in the state court, and, as the assignee is, in a certain sense, the representative of the creditors, I am inclined to the opinion that the judgment of the state court is conclusive, between not only the bankrupt and the present opposing creditors, but between him and any other creditor not a party to that suit.

In respect to the second proposition it is necessary to say only that this court has no authority to sit in judgment on the errors of the state court. That judgment, whether erroneous or not, is conclusive and binding on this court and on all courts, until reversed in due course of law.

The third and fifth propositions may be considered together.

The fourteenth section of the bankrupt act, among other things, provides that "all the property conveyed by the bankrupt in fraud of his creditors * * * in virtue of the adjudication of bankruptcy and the appointment of his assignee, be at once vested in such assignee." The property sold by the bankrupt to Landrath on the 21st of February, 1867, though sold prior to the passage of the bankrupt act, being sold in fraud of the vendor's creditors, did, by the terms of the statute, vest in the assignee. It is wholly immaterial that the title, as between the vendor and the vendee, did, by the contract

of sale, vest in the vendee. As to creditors, the sale was then void. and the title, in theory of law, remained in the vendor for the benefit of creditors, and abode in him until his assignee in bankruptcy was appointed, when it passed to him. But if the title remained in the bankrupt, I think he concealed his estate and effects within the meaning of the statute, by concealing that title from both his creditors and assignee, though there was no physical concealment of the effects themselves. The concealment denounced by the twenty-ninth section of the act embraces a concealment of title to property as well as the hiding from view of property itself. What matters it to a debtor's creditors that his property may be seen by all men, if his right to it be concealed? Undoubtedly, concealment of property may be effected by the literal hiding of it, so that, though it is known to exist and to belong to the bankrupt, it cannot be found. This is doubtless the kind of concealment mentioned in the thirty-ninth section. But the most dangerous sort of concealment takes place when the debtor places the title of his property in some other person's hands to hold the same for his secret benefit, and conceals his beneficial right to it from his creditors. And I am satisfied that both kinds are equally forbidden by the statute, or, to speak more accurately, that either kind will preclude a discharge being granted to the petitioning bankrupt.

The bankruptcy statute was in one sense designed for the relief of insolvent debtors; but it was meant to relieve, and does, only such debtors as come with all their property of all kinds, and lay it at the feet of their creditors. It never was meant to give the smallest comfort or relief to a debtor who had at any time attempted, by sale. conveyance, or otherwise, to place his property beyond the reach of his creditors, and who persisted in the fraudulent purpose and effort to keep it from them. A fraudulent conveyance, I have already said, made by the debtor anterior to the passage of the bankruptcy statute, will not of itself preclude his discharge; but in such case he should not conceal nor attempt to conceal the fraud when he comes to ask the benefit of the statute. He should come into court with clean hands, or at least with a clean conscience, and disclose fully all property and rights to property which his creditors may appropriate to the satisfaction of their claims. Though the sale in this case was made prior to the passage of the statute, and is on this account to be held no offense against it, the concealment has taken place since as well as before, because it is a continuing act, commencing at the moment of the fraudulent sale and continuing until long after the bankrupt filed his petition in bankruptcy. And if the judgment of the state court did not operate legally to put an end to the concealment, it continues still by reason of the continued denial by the bankrupt of his interest in the property so

fraudulently disposed of by him. But it is insisted that the sale made by the bankrupt was not fraudulent, in fact; that it was not made with any intent to cheat creditors; that it was at most only constructively fraudulent, or, at least, that it cannot be assumed, from the chancellor's decree, that he found any actual fraud. It is insisted that, on the assumption that the chancellor's decree is conclusive of the fraud, it was not shown whether it was actual or constructive fraud, and if the latter, the failure of the bankrupt to disclose the property is no concealment.

I will not say that a sale which a court, in obedience to an inflexible rule of law, might be constrained to pronounce fraudulent, could not, under some circumstances, be so free of moral turpitude as to absolve the vendor who should fail to disclose such sale from the charge of concealment, but it is difficult to conceive of such a case. It is difficult to conceive of fraud free of moral turpitude, and surely it cannot be assumed that it is free. It may be, too, that as every concealment implies something wilful, a bankrupt might be excused for failing to disclose a fraudulent conveyance when made many years past, and when he had long ceased to have any enjoyment of the property. But it is not necessary to say more of these conjectural cases, or to indicate a more decided opinion respecting them. It was to avoid the question suggested by them that the parties were allowed to present, and did present, the evidence or testimony read and produced in the state court. The case thus presented is, to my mind, free from all difficulty. The evidence shows the case to be this: The bankrupt, Hussman, was, on the 21st of February, 1867, a merchant conducting business on Market street in Louisville, between Brook and Floyd streets. On that day he sold his whole stock of goods to his father-in-law, Landrath, who was likewise a merchant, conducting business on the same block or square. The consideration expressed in the bill of sale is one thousand three hundred dollars cash. After the sale the vendor continued in possession, buying and selling goods as before, except that in some instances he caused the accounts to be made out in the name of Landrath as purchaser. The sign over the door continued the same, except that in addition to the name of Henry Hussman there was added in small letters, "Agt." Landrath remained at his store conducting business as before, though he was occasionally seen in the store of Hussman, and appeared to be there exercising some equivocal acts of ownership. So matters continued about nine months, and until the suing out of the attachment from the state court in November, 1867, hereinbefore mentioned. There is testimony to the effect that, at or about the time of the alleged sale, Landrath was seen to pay or give Hussman a considerable sum of money, but this testimony cannot relieve the transaction from the impu-

tation of fraud with which all the circumstances indelibly stamp it. Landrath had no motive to make the purchase. and it is absolutely incredible that he actually paid Hussman one thousand three hundred dollars, especially as it appears that he then claimed that Hussman owed him six hundred dollars, which debt the parties do not pretend was cancelled or satisfied by the sale. It is an easy matter for the parties to go through the form of paying and receiving money in the presence of witnesses. This is a common device of parties contriving a fraud, but endeavoring to fortify themselves with the evidence of good faith. So, too, the placing of the device "Agt" on the sign of the bankrupt is so generally the cover on fraud that, so far from freeing the transaction from suspicion, it serves only to awaken it.

No principle has been more conclusively settled in this state, by adjudged cases, or more invariably recognized and applied, than that which denounces a retention of the possession and use and ostensible ownership of movable property after an absolute voluntary sale of the title, as a fraud, conclusive and intraversable, as against creditors. Dale v. Arnold, 2 Bibb. 605; Hundley v. Webb, 3 J. J. Marsh. 643; Allen v. Johnson, 4 J. J. Marsh. 235; Lyne v. Bank of Kentucky, 5 J. J. Marsh. 545–574; Woodrow v. Davis, 2 B. Mon. 298; Waller v. Cralle, 8 B. Mon. 11. In the latter case the court says: "An actual change of possession, so far as the thing sold is susceptible of it, is absolutely necessary to the validity of the sale as to creditors and subsequent purchasers, whenever the vendor, at the time of the sale, is in the possession of the property. And this transmutation of possession, to be effectual, must not be merely nominal or momentary, but must be real, actual, and open, and such as may be publicly known." See. also, Jarvis v. Davis. 14 B. Mon. 424. [Robbins v. Oldham, 1 Duv. 29; Williams, Bankr. 350.][2] The rule in the courts of the United States has been almost equally explicit and absolute (Hamilton v. Russell, 1 Cranch [5 U. S.] 309; U. S. v. Hoe, 3 Cranch [7 U. S.] 73–89; Meeker v. Wilson [Case No. 9,392]; Phettiplace v. Sayles [Id. 11,083]; Brooks v. Marbury, 11 Wheat. [24 U. S.] 78–82; Conrad v. Atlantic Ins. Co, 1 Pet. [26 U. S.] 388–449), though the extreme rigor of the rule is perhaps somewhat modified by the more recent case of Warren v. Norton, 20 How. [61 U. S.] 448.

I am well aware that in England, and in most of the states, the more liberal rule is adopted, and that it may now be regarded as generally settled that the retention or possession by the vendor of a chattel is only prima facie evidence of fraud. But whether the more absolute rule fixed by the unbroken current of decisions in this state, or the more liberal one generally adopted, be applied to

[2] [From 2 Am. Law T. Rep. Bankr. 53.]

this case, the result is the same. From Twyne's down to the very latest case, no sale, I imagine, has ever been upheld by any court where it had appeared that the vendor had remained in possession as Hussman did, performing all the offices of an absolute owner, and continuing so for many months, and in fact, until interrupted by his creditors, in every beneficial use and enjoyment which ordinarily appertain to the ownership of property.

There is still another circumstance entitled to some consideration. Both Landrath and Hussman are competent witnesses in this proceeding, but neither of them has testified or offered any explanation of the transaction. Certainly the most charitable must concede that the whole transaction is surrounded by circumstances of extreme suspicion. And I think it a sound rule, sustained by reason as well as by authority, that when it appears that a party to a suit has in his possession evidence which he can give to clear up any doubt or to resolve any difficulty, and he does not give it, the presumption is that the evidence, if given, would be in corroboration of that which has been already given against him. Clifton v. U. S., 4 How. [45 U. S.] 242. Counsel deem it important to inquire by what law the validity of the sale is to be determined. I hold the sale equally fraudulent, whether tested by the common law. by the statutes of Elizabeth, as interpreted in this state or other states, or by the general law of this state, where the sale was made, and the enquiry, therefore, becomes unnecessary. The discharge is refused.