ACTION of replevin for a general stock of store goods purchased by the plaintiff from Jacob Hickman at Sandtown, in Murderkill hundred, Kent County, on the 21st day of February, 1878, for eight hundred and sixty-seven dollars and twenty-three cents, their full value, which were afterwards, on the 29th day of April following, seized and taken in execution by the defendant on several judgments recovered before a justice of the peace, one at the suit of Jordan and Fox for fifty-three dollars and costs, and one at the suit of Woodruff and Catts for forty-one dollars and thirty-five cents and costs, and another at the suit of Thompson and Bevins for one hundred dollars and costs, against Hickman, as his goods, and were replevied by the plaintiff.
The defence was that the goods were never delivered by Hickman to Groff, the plaintiff, or if so, they were, immediately afterwards returned by him to Hickman, and that the pretended sale *Page 37 
of them was fraudulent and void against the above-named creditors of Hickman.
The plaintiff proved that he had held since 1875 Hickman's promissory note for four hundred dollars for money loaned him, and eight or ten days before the sale he applied to him for the payment of it, when he informed him that it was impossible for him to pay him the money, and then proposed to him to sell him his stock of goods in his store, to which he replied that he did not know about it, but would consider the matter, and in two or three days afterwards saw him again and inquired what goods there were in his stock and what he considered them to be fairly worth, and he told him about the amount which he afterwards agreed to pay him for them. But he went over again in a few days and inquired what there was against the goods, when he informed him that in addition to his own note of four hundred dollars, he was indebted to George W. Porter in a judgment in this court for the sum of three hundred and twelve dollars and sixty cents, and also to William Sapp in another judgment in it for the sum of one hundred and four dollars and twenty cents, and he found on going to Dover and inquiring about them in the office of the prothonotary that it was as he stated, and he after that told him he would prefer to pay himself all claims against them, and would not be willing to pay to him the debts due to Porter and Sapp, but would pay them himself as part of the price to be paid for the goods by him. That a bargain was agreed upon between them on those terms, and the price to be paid for the stock of goods was to be determined by their cost price less five per cent, to be deducted from it. That Hickman measured and invoiced the goods at the price which they cost him, that the plaintiff pursuant to the bargain paid the amounts of the judgments to Porter and Sapp respectively, and that on the 21st day of February in that year an account of the stock of goods was taken by the plaintiff and Hickman in the storehouse at Sandtown, and the latter then sold and delivered the stock of goods to the plaintiff at the price and upon the terms agreed on in the bargain, and the plaintiff receipted to him for the judgments of Porter and Sapp and for his own note, and *Page 38 
surrendered it to him, and after deducting the aggregate amount of the debts from the price of the goods he paid the balance in money to him, and Hickman then delivered the key of the storehouse to the plaintiff who locked the door with it and put it in his pocket, but Hickman continued the tenant of the dwelling-house which was on the same premises but was separate from the storehouse. That the plaintiff was from that time the owner of the goods and merchandise in the storehouse and the tenant of it, and as such, continued the business of selling goods in it, and he then took out a State retailer's license and a United States revenue license for the purpose. And that the judgments before the justice of the peace upon which the executions had been issued and levied on the goods by the defendants in this action, and under which he had seized and taken them into his actual custody and possession and removed them to Camden, had been recovered against Hickman at the suit of the creditors mentioned after the sale of the stock of goods by him to the plaintiff. And that Hickman the next day and for a few days afterwards, acted as clerk in the store for the plaintiff, until the arrival of another person whom the plaintiff had employed in that capacity, and whom he had afterwards assisted in his employment in the store when occasion required it.
On the contrary, the defendant proved that the value of the stock of goods at the time of the alleged sale was much less than the price the plaintiff was to pay for them, and was but little more than five hundred dollars, and that Hickman was in the store behind the counter and selling goods the next day, and afterwards, as before, with little or no apparent change in the conduct or management of the business, except that Wooders, the new clerk, came in a few days after the sale and was also engaged with him in that business, but seemed to consider him as his principal and director in it, and that the plaintiff was more in the store after than before the sale.
Fulton for the defendant. If the plaintiff knew, or had reason to believe, when he bought the goods of Hickman, that he was in failing circumstances, and that his object was to prefer him and *Page 39 
Porter and Sapp to his other creditors, it was void under our statute of insolvency. Rev. Code 784, §§ 3, 4; Waters et al v. Comley, 3 Harr., 117.
But on the sale of goods they should be delivered by the vendor to the purchaser as soon as practicable, unless a future day is fixed for the delivery by the parties, and they must not be returned to the vendor, but continue in the possession and ownership of the purchaser exclusively, or the possession of the vendor and purchaser jointly afterwards. Waller v. Cralle, 8 B. Mon., 11; Van Peltv. Littler, 10 Cal., 394; Engles v. Marshall,19 Cal., 320; Danjean v. Blackster, 14 La., 473; M'Bridev. M'Clelland, 6 W. S., 94; Young v. M'Clure, 2 W. S., 147; Peck v. Land, 2 Kelly, 1; Flanigan v.
Lampman, 12 Mich., 58; Hamilton v. Russell, 1 Cranch, 309. As required by our Statute of Frauds, Rev. Code, 356, § 4.
Massey, for the plaintiff. In the case of Walters v.
Comleys 3 Harr., 117, it was held that a debtor in failing circumstances may give his bond to a creditor to secure the payment of a bona fide debt, and he may sell any portion of his personal property to him for the same purpose without any danger of violating the provision of the statute against fraudulent insolvency. But the only question involved in it was a quesion of fact for the jury to decide, whether the goods were sold in payment of a bona fide
debt due from Hickman to the plaintiff? And the same was also the character of the questions raised whether the goods were delivered by him into the possession and ownership of the plaintiff as they appeared to have been, and so continued in the possession of the plaintiff afterwards as his goods, without returning again to the ownership of Hickman, then there could be nothing in the fact that he was serving as a clerk in the store until he came, or continued to assist him as such after he came, or in any other fact disclosed in the evidence of the case, that could impeach or invalidate the sale on any ground of fraud whatever. Hugus v. Robinson, 24 Pa. 1; Edc v.
Johnson, 15 Cal., 56; Billingsley v. White, 59 Pa., 464; Youngv. M'Clure, *Page 40 
2 W. S., 147; M'Bride v. McClelland, 6 W S., 94; Warner v. Carleton, 22 Ill., 415; Hall v. Parsons, 15 Ver., 365; Cowgill v. Ford, 2 Houst., 164; Cleaver v.
Ogle, 1 Houst., 453; Hagany v. Herbert, 3 Houst., 628.
The Court,
charged the jury, that it had been ruled in the case of Waters et al. v. Comly, 3 Harr., 117, in the Court of Errors and Appeals in this State, that a bond given by a man in failing circumstances to a creditor, covering all his property, for the benefit of preferred creditors, would be void under our act against fraudulent insolvency, but at the same time it was held that such a debtor may give his bond to a creditor to secure the payment of a bona fide debt. So far as the proof goes, however, this was the case of a sale of stock of goods in a store at Sandtown in this county on the 21st day of February, 1878, by Jacob Hickman to the plaintiff, Robert H. Groff, in payment of a note for four hundred dollars and interest on it, which he owed, and two judgments in this court, one in favor of George W Porter for the sum of three hundred and twelve dollars and sixty cents, and the other in favor of William Sapp for the sum of one hundred and four dollars and twenty cents which the plaintiff had paid to them for him, and a small sum in addition thereto, as the price agreed on between them for the goods, Hickman not being able, as he has testified, to pay the plaintiff his note in money, which had then been due three years, offered to sell him the stock of goods, and on his inquiring what other claims there were against them, and being informed by him of the two judgments just mentioned, concluded, after some reflection, to accept his offer and to purchase them at the price then agreed upon between them, which was to be determined by their cost price, less five per cent, to be deducted, the plaintiff reserving the right to apply so much of the purchase-money as was required to pay the judgments, costs and interest in favor of Porter and Sapp, and which he soon after paid in full to them. It also appears, by the testimony of the witness, W.S. Muchler, Esq., a member of the bar of Maryland, who acted as counsel of, the plaintiff in the close of the transaction, that on the 21st of *Page 41 
February, 1878, an account of the stock of goods was taken by the parties in the storehouse at Sandtown, that the plaintiff receipted to Hickman for Porter's and Sapp's judgments and his own note, and then delivered the key of the storehouse to the plaintiff, who locked it up and put the key in his pocket. Soon after that, judgments were recovered before a justice of the peace by other creditors against Hickman for accounts due them prior to this transaction between him and the plaintiff, on which the executions were issued which came to the hands of the defendant, Cooper, the constable, and on which he seized and took the goods out of the possession of the plaintiff, as the goods of Hickman still, and detained them in his custody and possession until they were replevied by the plaintiff in this action now on trial before you, the plaintiff claiming to be the bona fide purchaser of them from Hickman and the lawful and rightful owner of them, and seeking damages in it for the taking and detention of them by the defendant until they were replevied, and the defendant claiming them by virtue of his executions and levies on them as the goods of Hickman, because his alleged sale of them to the plaintiff was made when he was in failing circumstances and insolvent, and for the purpose of preferring the plaintiff and Porter and Sapp to his other creditors, all of which the plaintiff well knew, or had good reason to believe or suspect at the time of the transaction, and was consequently fraudulent and void in law under our act against fraudulent insolvency. And the counsel for the defendant contends that it was but a pretended sale, wholly fictitious and fraudulent in its character, because the goods were again the next day and afterwards in the possession of Hickman in the same place as before, and so continued in his possession, or if not in his exclusive possession, at least in the mixed or joint possession of him and the plaintiff, which also rendered the sale fraudulent and void in law against all other creditors of Hickman under our statute of frauds. He further contends that the plaintiff must have known, from his intercourse with Hickman, or had good reason to believe or suspect that he was indebted to the parties whom he represents in this case, and if so, that the sale was null and void because it *Page 42 
was made by an insolvent debtor in preference of certain creditors over others, and to the plaintiff, as one of his creditors, who well knew the purpose of it, contrary to the statute against fraudulent insolvency.
In the case of Waters et al. v. Comly, the Court of Errors and Appeals in this State, in effect, declared the law to be, that any transaction of a debtor in failing circumstances (as, in this case, Hickman was) which seeks to prefer certain creditors to others by securing their debts out of his property and leaving the rest unpaid, is in fraud of our statute against fraudulent assignments, and void. That decision binds this court, and is the law of the State; and it therefore follows, that if the object and intention of Hickman in selling out to Groff, the plaintiff, was to prefer him and Porter and Sapp to his other creditors, of which number were the plaintiffs in the executions of Constable Cooper against Hickman, and Groff, the plaintiff then knew that they also were his creditors, and that the object of Hickman in selling out to him was to prefer him and Porter and Sapp to them as his creditors, then the transaction was fraudulent and void under the statute, and the seizure of the goods by Cooper, the constable, under the executions at the suit of those creditors was lawful and proper; and if the jury were satisfied from the evidence that such was the case, the plaintiff would not be entitled to recover in the action, and their verdict should be for the defendant with damages to the value of the goods, as they had been replevied out of his hands and restored to the plaintiff. Because, to make such a transaction fraudulent and void in law, and such a seizure valid and binding in law, it was necessary that the jury should be satisfied from the evidence, not only that it was the object of Hickman in selling out to the plaintiff to prefer him with his other two creditors, Porter and Sapp, to his other creditors, the plaintiffs in the executions afterwards sued out and levied on the goods by Cooper, the constable, but also, that the plaintiff knew, when he bought the goods from him, that they were creditors, too, of Hickman, and that his purpose in selling out to him was to prefer him and Porter and Sapp to them as creditors, or, in other words, to pay, in the failing condition in which he *Page 43 
then was, those three preferred creditors the whole amounts' due them, and at the same time to leave his other creditors wholly unpaid. For, without such proof with reference to the plaintiff, he could not be charged with any fraud in the transaction. In all such cases, the purchaser must have knowledge of the intention of the seller, in so disposing of his property, to prefer some one or more of his creditors to others, or the sale to him will be lawful and valid. This is the law in regard to preferring creditors under such circumstances; but there is no direct evidence in the case, that the plaintiff had knowledge of any such design on the part of Hickman when he bought the goods of him, nor has it been shown by any proof in the cause that any facts or circumstances were then known to the plaintiff that should have led him to believe, or to suspect, that Hickman had any other creditors than those he named to him, Porter and Sapp and himself, or that he had any intention of preferring them to other creditors, or contemplated any such fraud in the sale of his goods. We therefore instruct you that there has been no evidence adduced to sustain this ground of defence, and it should therefore be discarded by you from the consideration of the case entirely.
But the consel for the defendant has further contended that according to the evidence in the case there was not such a bona fide
sale and delivery of the goods by Hickman to the plaintiff as transferred the lawful property in them to him under anothen statute of the State, called the statute of frauds, which in substance provides that no sale of any goods and chattels within this State shall be good in law (except as against the vendor), or shall change or alter the property in such goods or chattels, unless a valuable consideration for the same shall be paid, or in good faith secured to be paid, and unless the goods and chattels sold shall be actually delivered into the possession of the vendee, as soon as conveniently may be after the making of such sale. And if such goods and chattels so sold, shall afterward come into and continue in the possession of the vendor, the same shall be liable to the demands of all his creditors.
Where the property is present at the time of the sale it should *Page 44 
be delivered immediately into the possession of the purchaser and this is done by placing it in his hands or by giving him the dominion and control over it, as by giving him the key of the building, room or place where it is stored. There are other modes of delivery, but it is not necessary in this case to refer to them, as the counsel for the plaintiff contends that the delivery of the goods sold was complete to the plaintiff by the handing to him by Hickman after they had taken the account of the stock of goods, of the key of the storehouse, and the locking up of the goods therein by the plaintiff and putting the key in his pocket. If you believe from the testimony of the witness that this was in fact done, then it was a good delivery in law of the goods to him as the purchaser of them. But the defendant's counsel contends that it was not an actual and honest delivery of them, but a pretended and fraudulent delivery of them, merely got up between them to give the transaction the appearance of an honest and bonafide sale; but even if it had been all that it pretended to be, it would have been without any effect as a delivery under the statute against any creditor of Hickman, for the goods afterwards, and the very next day, came into and continued in the possession of Hickman, and he continued to have a mixed possession of them, at least with the plaintiff for a long while after they had been seized in execution by the defendant as Hickman's goods and had been replevied by the plaintiff. If such was the case, or it is true that the goods were never in fact delivered to the plaintiff as his goods, or afterwards came into and continued in the possession of Hickman as his property, then the transaction was fraudulent and void in the contemplation of the statute, and the property or ownership in these goods never passed out of Hickman at all, as against any of his creditors to whom he was then indebted.
Now this depends entirely on the evidence and is the main question of fact in the case which you are to try. Was there an actual legal delivery of the goods in question by Hickman to the plaintiff on the occasion we have before mentioned? And if there were, did its effect remain unimpaired by the conduct of the parties afterward? I have stated to you that it has been *Page 45 
sworn to in the case both by Hickman and the witness, Mr. Mutchler, that the goods were invoiced and the custody and control of them was given by the delivery of the key of the store to the plaintiff, and the locking of the door with it by him. It was also testified by both of them that the evidences of the debt of the plaintiff and of the judgments of Porter and Sapp were surrendered by him to Hickman with the proper receipts upon them, and that the small balance remaining was paid to him in money. The defendant contends, however, that he has made sufficient proof to satisfy your minds that these goods the next day passed into and afterwards continued in the possession of Hickman and thereby became liable under the statute and the fraud involved in the transaction, to the demands of all his creditors, and to levy and seizure on the execution sin his hands, and that consequently your verdict should be for him.' If you should be of opinion, from all the evidence in the case, that the goods did so come into and continue in the possession of Hickman after they had been delivered by him to the plaintiff, and become his own property again with the right on his part to use and dispose of them as his own goods, then the delivery of them on the preceding day by him to the plaintiff, however formal or particular it may have been, became wholly inoperative and void under the statute as against the creditors of Hickman, and their verdict should consequently be for the defendant.
But what is meant with respect to the sales of personal property by the terms used in the statute of frauds to which we must give an interpretation consistent with reason, "come into and continue in the possession of the vendor" after they have been sold and delivered to the vendee, is this, that such property shall in some way, no matter how, get back or be restored to the possession and ownership of the vendor, without any responsibility or liability for it to his vendee who apparently became the actual bona fide purchaser and owner of it, and which is the same as saying that it returns to the possession of the vendor so as to give him the dominion and control absolutely over it without any accountability for it on his part to the vendee, and continues *Page 46 
therein, that is to say, it remains his so long as he chooses to retain the possession and ownership of it. The word "continue" is used in the statute to distinguish such a possession from a transient or temporary possession merely for a special purpose entirely consistent with the purchaser's general property in it. And the evidence relied upon by the defendant to show that the goods after their delivery to the plaintiff came into and continued in the possession of Hickman, is that of the witnesses who saw him on the occasion mentioned by them after the sale and delivery to the plaintiff, in the store behind the counter selling the goods to customers which is met by testimony on the other side that Hickman was at first so employed for the plaintiff in the store for a few days, until the clerk he had engaged should arrive and take charge of it, and that after he arrived and took charge of the store, it was by his request that Hickman assisted him in waiting on customers when in the store and the occasion required it, but that he had no property or interest in the goods, and sold them as the goods only of the plaintiff. Such was substantially the evidence not only of Hickman, but of Mutchler and Wooders, the clerk of the plaintiff. If such was the case, then, certainly, the goods could not be said to have come into the possession of Hickman as his goods after the sale or continued in his possession as his goods after it, contrary to the meaning and intention of the statute. And if the jury were satisfied from the evidence in the case that such was the possession merely which Hickman had of the goods after the delivery of them to the plaintiff, it would not constitute any ground of fraud to vitiate the sale under the statute, and their verdict should be for the plaintiff.
The plaintiff had a verdict.